# Wytheville

COMMONWEALTH OF VIRGINIA, ETC. v. CARSON G. MASON, COMMITTEE, ETC.

June 9, 1941.

Record No. 2371.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Spratley, JJ.

*Abram P. Staples, Attorney-General,* and *Walter E. Rogers, Special Assistant,* for the plaintiff in error.

*Hunton, Williams, Anderson, Gay & Moore* and *A. G. Robertson,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

This is an action at law by notice of motion for a judgment in favor of the Commonwealth of Virginia against the estate of Frank Switzer, a World War veteran, who was and is insane, the estate being represented by Carson G. Mason, Committee. The veteran was committed to the Western State Hospital, in Staunton, in 1928. He remained in that institution until 1932, when at the instance of the Veterans Administration he was transferred and recommitted to what was called the Davis Clinic, which was located at the Southwestern State Hospital at Marion, Virginia. (It is not now in existence as the "Davis Clinic.")

The Veterans Administration paid for his hospitalizaton at $2.00 per day, or $60.00 per month at the Davis Clinic until April, 1935. This organization declined to make further payments because the government was just finishing a veterans facility hospital at Roanoke, Virginia, in which he was eligible to be received for care and attention. His committee consented to his transfer to the Davis Clinic, and when the change to the Roanoke facility was suggested, the committee would not agree to it because he thought that his ward would receive individual care at a small institution which might not be accorded him at a larger one. This committee was discharged on January 27, 1936, and was succeeded by Major Mason, the defendant in error in this case.

The amount claimed to be due the Commonwealth was the sum of $2.00 per day from April 23, 1935, to April 23, 1937.

Section 1058 of the Code of Virginia is the statute which contains provisions for the expenses of insane persons. So much of it as is applicable is as follows:

"Sec. 1058. *When, to whom and by whom, expenses of insane * * * persons are paid.*—The estate of any person committed to any hospital for the insane * * * shall not be charged with any expense incident thereto or for

his maintenance therein. Nothing in this section, however, shall be construed to relieve the committee of any insane * * * person * * * from paying to the steward of any hospital * * * the sum required to be paid by this chapter for extra comforts of persons confined in said hospital * * *; nor to make it unlawful for any such committee to make voluntary gifts which said committee may deem conducive to the happiness and comfort of such persons so confined. * * * ''

A fair deduction from the evidence, we think, is that the Davis Clinic was really a part of the Southwestern State Hospital at Marion. It was created in 1921, without statutory authorization, but under an arrangement between the Southwestern State Hospital authorities and the United States Veterans Administration.

The testimony of Mr. Bradford, who is connected with the office of the Director of the Budget, shows that the General Assembly of Virginia appropriated money specifically to the Southwestern State Hospital and the Davis Clinic buildings were erected with the money from such appropriations. It is true that it was operated largely by money derived from pay patients of the Veterans Administration. When the Davis Clinic went out of existence in 1937, the buildings became a part of the Southwestern State Hospital, a state institution. In our opinion it is of no special significance that the expenses of the veteran were paid by the Veterans Administration until it secured its own facility at Roanoke. This veteran is a citizen of Virginia and was an inmate of one of the state's institutions for the insane where there could be no legal hospitalization charge against him or his estate. He was transferred to another like institution, as Dr. DeJarnette testified, ''under compulsion.'' We think that the statute quoted is applicable and that there cannot be any legal charge against his estate. The policy of the state, as reflected by the statute, is to take care of its unfortunates, of the type here, without expense to them.

It is urged by the state that the first person acting as committee made a contract with the Davis Clinic for the hospitalization of his ward, but the verdict of the jury settled that contention adversely to it. It is further urged by the state that an insane person is liable for necessaries furnished him in good faith and that this obligation is *quasi-contractual* in its nature and it is implied by law. This is true; but it is subject, of course, to the statutory provision which is controlling in this case.

The instructions, which are not model ones, are based upon the facts proven. The record does not disclose that any other instructions were tendered to the court and refused by it. It is the duty of a litigant, who thinks the instructions given do not fairly present the case from the standpoint of the evidence which is favorable to him, to prepare and offer such instructions as will accomplish this purpose. If he does not do it, censure for the omission lies at his door.

If the instructions complained of are erroneous it is harmless error, because we do not think that any other verdict could have been reached under the law and the evidence.

The judgment is plainly right and we affirm it.

*Affirmed.*