# Richmond

## Dawson Andrews, Jr. v. Commonwealth of Virginia.

September 5, 1975.

Record No. 741203.

Present, All the Justices.

*William P. Robinson, Jr. (Mason, Moore & Robinson, Ltd.,* on brief), for plaintiff in error.

*James E. Kulp, Assistant Attorney General (Andrew P. Miller, Attorney General, on brief), for defendant in error.*

I'Anson, C.J., delivered the opinion of the court.

Defendant, Dawson Andrews, Jr., was indicted for possession of heroin with intent to distribute. The court below, sitting without a jury, convicted him of possession of heroin and sentenced him to five years in the State penitentiary.

Defendant contends that (1) the evidence was insufficient to support his conviction, and (2) the trial court erred in admitting certain evidence because the evidence was obtained by an illegal search warrant.

The evidence shows that on March 6, 1974, Detective H. W. Scott, of the Norfolk Police Department's narcotics squad, received information from a reliable informant that defendant would be arriving by airplane at the Norfolk Regional Airport from New York City and that he would be carrying a large quantity of heroin. As a result of obtaining this information, Detective Scott and other officers established surveillance of all incoming flights from New York City.

On March 7, 1974, at 12:59 p.m., the defendant and Lillian Peugese arrived at the airport via Piedmont Airlines flight 79. Upon their arrival they were arrested by the police and a cursory search was conducted. In Miss Peugese's purse the police found two tickets for the flight from New York City. Defendant and his companion advised the police that they had been in New York for only one day and that they did not have any baggage. They were then taken to police headquarters where they were "strip searched." Since there were no drugs or baggage claim checks found on them, they were released from custody.

Immediately thereafter the police discovered that three unclaimed bags from flight 79 were located in the Piedmont baggage room at the airport; consequently, they set up surveillance of the bags. At approximately 4:15 p.m., defendant and his companion returned to the airport. During this visit the defendant approached the unclaimed bags, looked at them, and left without touching them. About 6:20 p.m. on the same day, defendant again returned to the baggage room of the airport and again left without claiming the bags.

Late that night, when the police were informed that the Piedmont baggage room would soon be closing, Detective Scott obtained a search

warrant for the three unclaimed bags. The affidavit used to secure the warrant stated:

"(2) THE MATERIAL FACTS CONSTITUTING PROBABLE CAUSE FOR ISSUANCE OF THE SEARCH WARRANT: I have received information from a reliable informer who has given me information in the past that has led to the arrest of other persons for possession of a controlled drug, stated to me that Andrew Dawson, a black male, was coming from New York City with a large quantity of heroin, on an airlines at the Norfolk Regional Airport. I have placed a surveillance on all incoming flights from New York City to Norfolk, starting at 8:00 A.M., March 6, 1974. The above mentioned subject (Andrew Dawson) arrived in Norfolk March 7, 1974, at approximately 12:59 P.M. on Piedmont Flight 79. Subject was stopped and arrested reference to the felony investigation (Controlled Drugs, Heroin). He was traveling with a black female Lillian Peugese, they were searched at that time and I found in their possession tickets to flight 79, New York City, Piedmont Airlines. The two subjects stated they stayed in New York one day and did not have any baggage. I checked with Piedmont Airlines and found there were three bags that were not claimed that came off Flight 79 from New York. Based on the information given me by my informer and the reliability of his information in the past plus the surveillance placed on the flights at Piedmont Airlines which also revealed that the two subjects (Andrew Dawson and Lillian Peugese) have returned to the Norfolk Regional Airport to check on the three bags which were not picked up from Flight 79. I believe I will find heroin in the three bags."

When the police searched one of the bags they found, secreted inside a tennis shoe, a package containing heroin and a .38 revolver, which bore defendant's fingerprint on the cylinder. In the same suitcase was found clothing similar to the clothing worn by defendant in a picture taken of him while he was in New York City.

The next morning, March 8, defendant was again seen leaving the airport in his automobile.

Defendant first contends that the evidence was insufficient to convict him of possession of heroin. We do not agree.

When a criminal conviction is appealed, we must consider the evidence in the light most favorable to the Commonwealth, granting

to it all reasonable inferences fairly deducible therefrom. *Evans* v. *Commonwealth*, 215 Va. 609, 612, 212 S.E.2d 268, 271 (1975).

To convict a defendant of illegal possession of drugs, the Commonwealth must prove that the defendant was aware of the presence and character of the drugs, and that he intentionally and consciously possessed them. Constructive possession may be established by a showing that an accused has dominion or control over the drugs. *Gillis* v. *Commonwealth*, 215 Va. 298, 301-02, 208 S.E.2d 768, 771 (1974); *Ritter* v. *Commonwealth*, 210 Va. 732, 741, 173 S.E.2d 799, 805-06 (1970). In *Ritter* we also said that possession may be proved by "evidence of acts, declarations or conduct of the accused from which the inference may be fairly drawn that he knew of the existence of narcotics at the place where they were found." 210 Va. at 741, 173 S.E.2d at 806.

In the case at bar, because of defendant's repeated trips back to the airport to check on the unclaimed baggage after stating to the police that he did not have any baggage on the flight, his fingerprint on the gun which was found in the tennis shoe with the heroin, and clothing similar to his in the same suitcase in which the heroin was found, the trial court could fairly infer that defendant knew of the existence of the heroin in one of the suitcases and that he was intentionally and consciously in constructive possession and control of it.

Defendant's reliance on *Huvar* v. *Commonwealth*, 212 Va. 667, 187 S.E.2d 177 (1972), and *Crisman* v. *Commonwealth*, 197 Va. 17, 87 S.E.2d 796 (1955), and other cases cited, is misplaced because those cases stand for the proposition that an accused's mere proximity to persons or places where drugs are found is, standing alone, insufficient to convict for possession.

Defendant also contends that the search warrant used to obtain the evidence was defective because the affidavit for the issuance of the warrant failed to set forth the basis upon which the informant obtained his information.

In *Aguilar* v. *Texas*, 378 U.S. 108 (1964), the Supreme Court held that affidavits for search warrants based on information from an informant must inform the magistrate of some of the underlying circumstances (1) from which the informant based his conclusion, and (2) from which the affiant concluded the informant was credible or his information reliable. 378 U.S. at 114.

Defendant conceded that the informant was credible and that his information was reliable. However, he argues that the information

contained in the affidavit did not meet the test requiring an informant to relate the underlying circumstances upon which he based his conclusions.

In interpreting *Aguilar*, the Court, in *Spinelli* v. *United States*, 393 U.S. 410 (1969), said:

". . . In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.

"The detail provided by the informant in *Draper* v. *United States*, 358 U.S. 307 (1959), provides a suitable benchmark. While Hereford, the Government's informer in that case did not state the way in which he had obtained his information, he reported that Draper had gone to Chicago the day before by train and that he would return to Denver by train with three ounces of heroin on one of two specified mornings. Moreover, Hereford went on to describe, with minute particularity, the clothes that Draper would be wearing upon his arrival at the Denver station. A magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way. . . ." 393 U.S. at 416-17.

Thus, even though an informant's tip may lack detailed information as to how he obtained his information, it may be valid for probable cause determination by a magistrate if it contains sufficient detail to permit the magistrate to reasonably infer that the informant gained his information in a reliable way, or that it was sufficiently corroborated by independent sources to supply as much trustworthiness as the *Aguilar* test. *See also McKoy* v. *Commonwealth*, 212 Va. 224, 226, 183 S.E.2d 153, 155-56 (1971); *United States* v. *Marihart*, 472 F.2d 809, 813 (8th Cir. 1972), *cert. denied*, 419 U.S. 827 (1974); *United States* v. *Cummings*, 507 F.2d 324, 327-29 (8th Cir. 1974); *State* v. *Hodge*, 11 Or.App. 525, 504 P.2d 143, 145 (1972).

Here, the informant told the police that defendant would be coming from New York City by airplane; that he would arrive at the Norfolk Regional Airport; that he would be carrying a large quantity of heroin; and that defendant was a black male whose name was Andrew Dawson. As in *Draper*, the affidavit was in sufficient detail to permit

the magistrate reasonably to conclude that the information was more substantial than casual rumor and that the informant was credible and his information reliable.

Moreover, the tip of the informant that the defendant would arrive in Norfolk by plane was confirmed by the police before the search warrant was issued. The affidavit also contained the statements of Detective Scott that defendant and his companion had returned to the airport to check on the three suitcases which arrived on Piedmont flight 79 and remained unclaimed. This activity was of particular significance in establishing additional information that probable cause existed for the search, since the defendant and his companion had advised the police that they did not have any baggage on the flight.

We hold that the affidavit met the *Draper*, *Aguilar* and *Spinelli* tests; that the evidence complained of was obtained pursuant to a valid search warrant; and that it was properly admitted by the trial judge.

For the reasons stated, the judgment of the court below is

*Affirmed.*