## Richmond

### MELVIN I. SHIFFLETT

### V.

### COMMONWEALTH OF VIRGINIA

August 28, 1980.

Record No. 791272.

Present: Carrico, Harrison, Cochran, Poff, Compton and Thompson, JJ., and Harman, S.J.

*Robert T. Hall* (*Hall, Surovell, Jackson & Colten, P.C.,* on briefs), for appellant.

*Richard B. Smith, Assistant Attorney General* (*Marshall Coleman, Attorney General,* on brief), for appellee.

PER CURIAM.

Melvin Irving Shifflett was convicted by a jury of committing sodomy and a malicious wounding of Diane Kruger. The defendant was sentenced by the trial court to serve five years and thirteen years, respectively, in the state penitentiary. His petition for appeal of the malicious wounding conviction questions the action of the trial court in granting an instruction which reads as follows:

> Instruction No. 11. THE COURT instructs the Jury that a man is presumed to do that which he voluntarily does, and if you believe from the evidence beyond a reasonable doubt that the Defendant, Melvin Irving Shifflett, did cut and wound the victim, with the intent to maim, disfigure, disable or kill the said Diane Kruger, then you shall find the Defendant guilty of maliciously cutting the said Diane Kruger and fix his punishment in accordance with another instruction of the Court as to malicious wounding.

This instruction, one of fifteen granted in the case, was given without objection. The Commonwealth's Attorney conceded, and the trial court recognized, that the instruction was erroneous in that it told the jury that the mere cutting and wounding of a victim with the necessary intent is sufficient to sustain a conviction of malicious wounding. Code § 18.2-51 contemplates that a cutting or wounding may either be a malicious wounding or an unlawful wounding, and a jury should be so instructed. With the exception noted, the jury in the instant case was fully, fairly, and accurately instructed. The trial court told the jury that under the indictment it could find any one of four verdicts, *i.e.,* malicious wounding, unlawful wounding, assault and battery, or not guilty, and the punishment it could inflict; that in the absence of proof to the contrary, malice may be implied from the deliberate use of a deadly weapon, when used in a manner calculated to take the life of another human being; and that if it believed that the defendant unlawfully, but without malice, wounded the victim with intent to maim, disfigure, disable, or kill, it should find the defendant guilty of unlawful wounding.

At the time the case was submitted to the jury no objections had been voiced to any instruction granted by the trial court which concerned the charge of malicious wounding. Following argument of counsel and during its deliberation, the jury returned to the courtroom and requested, by note to the trial court, to "[p]lease define malicious for [the] jury" and "[d]efine unlawful from Instruction No. 9." Instruction No. 9 defined the four possible verdicts. The court responded as follows:

This is the definition of malicious, the word malicious. The malice necessary to constitute a malicious wounding may be either express or implied. The word "malice" is used in a technical sense, and includes not only anger, hatred and revenge, but every unlawful and unjustifiable motive. It is not confined to ill will to any one or more particular persons, but is intended to denote an action flowing from a wicked or corrupt motive, done with an evil mind and purpose and wrongful intention, where the act has been attended with such circumstances as to carry in them the plain indication of a heart regardless of social duty and deliberately bent on mischief; therefore, malice is implied by law from any wilful, deliberate and cruel act against another, however sudden.

Now, the second question was "define unlawful from Instruction No. 9."

This is a much shorter one. An "unlawful wounding" is any intentional, unjustified wounding without malice, but with intent to maim, disable, disfigure or kill.

Now, you ladies and gentlemen will have these. These are the legal definitions of those terms that you asked for and you will have these when you go to your Jury room to further deliberate.

After the jury retired to resume its deliberation, counsel for the defendant stated to the court: "I want, for the record, to object to the granting of any further instructions and particularly the two instructions [defining malicious wounding and unlawful wounding] that were given." He objected to the language of Instruction No. 11 and expressed the fear that the definitions given by the court in response to the jury's request would not cure the error in Instruction No. 11 which was still in the hands of the jury. Counsel suggested that the jury be recalled, the objectionable instruction be withdrawn, and the jury be instructed to disregard it. The court declined to withdraw

the instruction, but offered counsel for the defendant an opportunity to reargue the matter before the jury. Counsel refused, stating that for him to argue a single instruction would unnecessarily highlight the import of that instruction.

The Commonwealth argues that the defendant did not save his objection to Instruction No. 11 in the court below, and that he should not now be allowed to raise this point on appeal. The defendant responds that his objection to the instruction was timely made before any verdict by the jury was reached or returned and at a time when the court was still considering the instructions. The Commonwealth further claims that any error in Instruction No. 11 was cured by the other instructions granted by the court and specifically by the instructions defining malicious wounding and unlawful wounding. The defendant counters that it is rare that a material error in one instruction can be cured by a correct statement of the law in another.

█ It would have been the better part of wisdom for the court to have corrected the erroneous instruction after the error therein had been called to its attention. However, we believe that this error was cured by other instructions given the jury. Moreover, it is clear from the evidence that the jury could not properly and fairly have returned any verdict other than one of malicious wounding. *Commonwealth* v. *Mason,* 177 Va. 684, 688, 15 S.E.2d 114, 116 (1941); *Gills* v. *Commonwealth,* 141 Va. 445, 451, 126 S.E. 51, 54 (1925); *Reliance Ins.* v. *Gulley's Adm'x,* 134 Va. 468, 484, 114 S.E. 551, 556 (1922).

Diane Kruger, age twenty-one, was employed as a machine design draftsman at Universal Dynamics in Woodbridge, Virginia. On the evening of August 2, 1978, she visited the Firehouse Restaurant in Woodbridge and while there engaged in conversation with the defendant, whom she knew only casually. During the course of their conversation the girl spoke of having trouble with the brakes and electrical system of her automobile. Shifflett offered to assist in determining and correcting the trouble but said he wanted to "listen" to the brakes. Shifflett and Kruger left the restaurant in Kruger's automobile, with the girl driving. After driving for a while, Kruger, at defendant's request, parked her automobile on a street near the Bay View Apartments. The girl was under the impression that Shifflett would be picked up there by a friend who was driving defendant's car. When the friend did not show up, and Kruger expressed the desire to go home "because it was getting late," she was prevented from doing so by Shifflett. Kruger said that the defendant pulled

out a knife, told her he was going to "cut [her] up," and then continuously poked and stuck her with the knife. She said that he forced her to commit sodomy while pushing and probing the knife against her skin. She testified that after the first act of sodomy the defendant tied her hands behind her back and pushed a roll of toilet paper into her mouth with such force that he broke two of her front teeth. Following this attack, Miss Kruger was again forced at knife point to commit oral sodomy. She said that during the act defendant kept pushing and poking her with his knife. She finally felt warm blood on her back and realized that she had been cut and was bleeding. In an effort to escape she hit the defendant with a bottle which she found under the seat of the car. Ultimately she did escape from the automobile to the sidewalk and was followed by the defendant, who continued the stabbing. She was then bleeding profusely from stab wounds in her back and stomach. The stabbing was stopped only when Kruger's cries for help attracted the attention of several residents in the neighborhood, causing the defendant to flee.

The identification of defendant as the assailant was clearly established. He was seen fleeing from the scene of his attack and when arrested still had blood on his hands. The evidence is conclusive that the attack by the defendant on Miss Kruger was a completely unprovoked, cruel, and vicious assault, deliberately and maliciously carried out under terrifying conditions. Defendant failed to introduce any evidence that would warrant any conclusion to the contrary.

While it was within the power of the jury to return any one of four verdicts in this case, the only verdict consistent with and supported by the evidence was the verdict of malicious wounding which it did return.

Accordingly, the judgment of the court below is

*Affirmed.*