**Alexandria**

CHARLES MICHAEL ANDERSON

v.

COMMONWEALTH OF VIRGINIA

No. 1379-92-4

Decided September 27, 1994

Counsel

Leonard R. Piotrowski, for appellant.

Richard B. Smith, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

Opinion

DUFF, S.J.—On appeal from his jury trial convictions of two counts of distributing a controlled substance, Charles Michael Anderson contends the trial court erred (1) in admitting into evidence certificates of analysis noting him as a suspect and identifying Phencyclidine as a Schedule II drug, (2) in refusing to instruct the jury that the Commonwealth was required to prove he knew the substance he distributed was a controlled substance, and (3) in improperly sentencing him on his two convictions. Finding no merit in the assignments of error, we affirm the judgments of the trial court.

On October 2, 1991, and again on October 10, 1991, Officer Muncey, working undercover, and an informant met with Anderson. On each occasion, Anderson sold Muncey ten packets of Phencyclidine, or "green," for $100. Each group of ten packets weighed approximately .14 ounce. During the October 2, 1991, exchange, Muncey smelled one of the packets and detected an ether-like odor. When he asked whether the packets contained "green," Anderson replied, "yes." On October 10, 1991, Anderson sold Muncey ten more packets. Anderson told Muncey that the packets were "dimes," that it was "good stuff," and that he would have two "cans" later that night. Following each exchange, Muncey personally delivered the purchased substance to the police laboratory where it was examined and found to be Phencyclidine.

At trial, Officer Muncey testified that the street name for Phencyclidine is "green." He also testified, based on his experience and training, that Phencyclidine smells like ether and that a "can" is a film canister filled with plant material impregnated with the drug.

The Commonwealth introduced the laboratory reports into evidence. Each report indicated Anderson as "suspect(s)." Each report stated that the substance tested was "Phencyclidine (PCP),

Schedule II."

The jury convicted Anderson of distributing Phencyclidine on each occasion. The trial court sentenced Anderson to eighteen years confinement in the penitentiary for the October 2 offense and to twenty-eight years confinement in the penitentiary, with ten years suspended, for the October 10 offense.

## THE CERTIFICATES OF ANALYSIS

Anderson first contends that the trial court erred in admitting the certificates of analysis into evidence. He argues that his designation as "suspect" was prejudicial and that the identification of Phencyclidine as a Schedule II substance was hearsay. We find no error in the trial court's receipt of this evidence.

The notation of Anderson's name on the certificates related the certificates to his case, preventing confusion and preserving the integrity of the evidence. The Commonwealth established a chain of custody between Anderson and the substances analyzed by the laboratory. *See* Code § 19.2-187.01. Prior to the introduction of the certificates, Officer Muncey testified without objection that Anderson sold him the substances and that he personally took the substances to the laboratory. This chain of custody linked Anderson directly to the Phencyclidine and to the certificates. The notation on the certificates verified that link.

Code § 54.1-3448(4) lists Phencyclidine as a Schedule II controlled substance. Knowledge of that classification falls within the scope of the forensic laboratory technician's expertise. Thus, it was a proper element of his report.

## THE REFUSAL OF INSTRUCTION H

Anderson next contends that, because the indictments charged that he did "unlawfully and feloniously, knowingly or intentionally distribute a controlled drug, to wit phencyclidine," the trial court erred in denying his proffered Instruction H. Instruction H read:

Knowledge that the drug distributed is a controlled substance is an element of the crime of distributing phencyclidine. Thus you may not find the defendant guilty of such crime unless you believe beyond a reasonable doubt that he was aware that the substance he distributed was a controlled sub-

stance. It is not necessary, however for you to find that the defendant was aware that the very act of distributing phencyclidine was against the law.

In *Hamling v. United States*, 418 U.S. 87 (1974), the Supreme Court considered the scienter requirement in a prosecution for distribution of obscene materials. The Court said:

It is constitutionally sufficient that the prosecution show that a defendant had knowledge of the . . . character and nature of the materials. To require proof of the defendant's knowledge of the legal status of the materials would permit the defendant to avoid prosecution by simply claiming that he had not brushed up on the law.

*Id.* at 123.

■ The burden was on the Commonwealth to establish that the defendant knew the nature and character of the materials he was charged with distributing. *Andrews v. Commonwealth*, 216 Va. 179, 182, 217 S.E.2d 812, 814 (1975); *Williams v. Commonwealth*, 14 Va. App. 666, 669, 418 S.E.2d 346, 348 (1992). This does not mean that a defendant must know the accurate and precise name of the drug, only that it is a substance, the distribution of which is illegal. The first sentence of the instruction advised the jury that knowledge that the drug was a controlled substance was an element of the crime. The last sentence appears ambiguous but, in effect, states that the defendant does not have to know that distribution of the substance was against the law. We believe that the instruction was confusing and would not aid the jury in a proper resolution of the issues presented.

■ The scienter requirement in distribution cases may be proved circumstantially. Indeed, the mere "[p]ossession of a controlled drug gives rise to an inference of a defendant's knowledge of its character." *Joseph v. Commonwealth*, 10 Va. App. 87, 101, 390 S.E.2d 491, 498-99 (1990) (en banc).

Even though Instruction H was denied as phrased, both the defense and the prosecution argued the case to the jury as if a proper scienter instruction had been given. Defense counsel stated, "They don't prove to you that he knew it was a controlled substance." The prosecutor argued, "We have to prove beyond a rea-

sonable doubt that he distributed phencyclidine. . . . He sold those drugs. He knew what they were."

We believe it is clear from the record as a whole that the jury could not properly and fairly have found that the defendant lacked the requisite knowledge. *See Shifflett v. Commonwealth*, 221 Va. 191, 194, 269 S.E.2d 353, 355 (1980) (failure to correct erroneous instruction not reversible error where it is clear from the evidence that the jury could not properly and fairly have returned any verdict other than one of malicious wounding). Anderson referred to the contraband as "green" and told Muncey that the packets were "dimes" and that it was "good stuff." He also told Muncey that he would have two "cans" later that night. Muncey testified that the street name for Phencyclidine is "green," and that a "can" is a film canister filled with plant material impregnated with Phencyclidine.

The denial of the proffered instruction was not reversible error.

## THE SENTENCING

Finally, Anderson contends the trial court violated his due process rights by prejudicially considering his election to plead not guilty and have a jury trial. The record does not support that contention.

At sentencing, Anderson's counsel presented a "sentencing memorandum" and asked the trial judge to consider it and Anderson's record. The following dialogue took place between the trial judge and Anderson's counsel:

THE COURT: How do you justify, Mr. Piotrowski, a decision to avoid pleading so that your record isn't available to the judge and you go to the jury with the records not available and then you argue, "Well, look at this record. We got the wrong sentence. We want you to mitigate it now, Judge."

MR. PIOTROWSKI: Your Honor, do I have to justify that decision?

THE COURT: Yeah, you do.

MR. PIOTROWSKI: All right, I will justify that decision on the basis that a judgment value in that case and discussions with the defendant were that we could anticipate a sentence of between twenty and twenty-five years from a jury and/or a judge. It was a factual judgment made.

Now, that gamble — you can sit there, Your Honor, and say that gamble lost, and that gamble lost big time. That's not justification for approving a sentence of this type.

The trial court considered the material tendered by defense counsel, which included a pre-sentence report from another court. The trial court substantially reduced the sentence fixed by the jury. It imposed a sentence within the limits of the statute. The reported dialogue was but a rejoinder to argument advanced by defense counsel. Neither the trial judge's remarks nor his determination of sentence reflects prejudice. The sentences imposed were within the framework provided by law. We find no abuse of discretion. *See Robinson v. Commonwealth*, 13 Va. App. 540, 542, 413 S.E.2d 661, 662 (1992).

*Affirmed.*

Moon, C.J., concurred.

Willis, J., *concurring in part and dissenting in part.*

I concur in the majority holding with respect to the trial court's receipt of the certificates of analysis into evidence and its imposition of the sentence. However, I think the trial court erred in refusing Instruction H. In that regard, I dissent.

The Commonwealth was required to prove that Anderson knew the nature and character of the substances that he distributed. *See Andrews v. Commonwealth*, 216 Va. 179, 182, 217 S.E.2d 812, 814 (1975); *Williams v. Commonwealth*, 14 Va. App. 666, 669, 418 S.E.2d 346, 348 (1992). Had the jury concluded that Anderson believed the material was something other than a controlled substance, e.g. parsley, his mistaken belief would have been a defense requiring his acquittal.

I do not find Instruction H confusing. The identity of the distributed material as a controlled substance defined its nature and character. The first two sentences of Instruction H correctly set forth that proposition. The last sentence of the proposed instruction addresses not the nature and character of the substance, but the act of distribution. It correctly informs the jury that knowledge of the illegality of the act of distribution is not a required element of proof.

Evidence and argument of counsel are insufficient substitutes for the trial court's exposition of the law governing the case and the elements required to be proven. Anderson was entitled to have that law and those elements plainly and accurately set forth in the instructions so that the jury might know the proper standards by which to judge the evidence and argument.

I would reverse because of the refusal of Instruction H and remand for a new trial on proper instructions.