# CIRCUIT COURT OF LOUDOUN COUNTY

Commonwealth of Virginia

v.

Abdirizak Abdulahi Siad

March 6, 1997

Case No. (Criminal) 9463

BY JUDGE JAMES H. CHAMBLIN

On January 28, 1997, the defendant was tried without a jury on a charge of possession with intent to distribute cathinone, a Schedule I controlled substance, in violation of Virginia Code § 18.2-248. After consideration of the evidence and argument of counsel, both at trial and in the memoranda requested by the Court, the defendant, Abdirizak Abdulahi Siad, is found not guilty of the charge for the reasons set forth hereafter.

*Evidence*

On October 13, 1994, the defendant arrived at Dulles International Airport in Loudoun County on a United Airlines flight from London. He had a large suitcase (approximately two feet by three feet by twelve inches) and a carry-on bag. When he reached the primary customs checkpoint, he presented the inspector with a "Customs Declaration" in which he placed an "X" in the block for "No" to the following declaration:

> I am/we are bringing fruits, plants, meats, food, soil, birds, snails, other live animals, farm products, or I/we have been on a farm or ranch outside the U.S.

He was directed with his luggage to a secondary checkpoint. He did not go directly to that checkpoint, and the inspector had to yell at the defendant to get him to go to the secondary checkpoint.

At the secondary checkpoint, the defendant presented the declaration to Customs Inspector Cullum, placed the large suitcase on a belt, and opened it. The suitcase was filled with a "vegetable substance" described by Cullum as "bundles of plants" tied up with cords like "some greens" or "beet tops."

Cullum suspected the plants to be khat (pronounced "cot") which he had seen before. He asked the defendant what it was, and he said he had the right to bring it into the United States and it should not be illegal. Cullum called a supervisor to look at the suitcase and its contents. Cullum testified that the defendant was "argumentative" but gave no specifics.

The suitcase was closed, and it and the defendant were taken to a search room. Other inspectors came to the room. Eventually the suitcase and its contents were turned over to Investigator Gary Gaither of the Loudoun County Sheriff's Department. The defendant raised no objection to the chain of custody of the suitcase, its contents, or that part of its contents which were eventually sent to the Northern Virginia Laboratory for analysis.

While the defendant was in the search room at Dulles Airport, Special Agent Philip Reed of the United States Customs interviewed the defendant after he was advised of and waived his rights. The defendant said that he was in route to Chicago for a cousin's wedding, that the khat was his (the defendant used the word "khat" but never said "cathinone"), that he was taking it to the wedding, and that it was traditional in his culture to smoke it at weddings.

Investigator Gaither testified that khat is a plant native to East Africa and Saudi Arabia. Its technical or scientific name is *catha edulis*. Photographs of khat were introduced as Commonwealth's Exhibit 4. Gaither testified that it is chewed like tobacco, but the juice is swallowed. Its effect is similar to alcohol, making one, for example, hyper and talkative. He acknowledged that it is used by East Africans such as Ethiopians, and also by Muslims during ceremonies such as weddings and holidays.

Gaither testified that both cathinone and cathine are found naturally in khat. Cathinone is a Schedule I controlled substance, and Cathine is a Schedule IV controlled substance. He never testified that "khat" is the street name for cathinone or cathine.

Gaither took possession of the suitcase and its contents. A sample of the khat was bagged by Gaither, frozen, and sent to the laboratory for analysis. It was frozen by Gaither "to keep its potency intact." The certificate of analysis received in evidence without objection as Commonwealth's Exhibit 9 showed

the item described as "sealed packaging containing plant material" which was analyzed as "cathinone (Schedule I), 655.3 grams of plant material."

The defendant was born in Somalia, but he is now an American citizen. He came to the United States at age nineteen. He is now thirty-two. His family is in Somalia, except for the cousin in Chicago. In October 1994, he lived in Chicago. He went to London in early October to visit an uncle having surgery. When he left London to return to Chicago, he was asked by family in London to bring the khat for the cousin's wedding.

The defendant and his family are actively practicing Muslims. When he grew up in Somalia, khat was around "all the time." Although he has never chewed it, he has been around persons who have. He has attended weddings in Somalia and London where khat was used. He does not know how it is grown. He has seen numerous people chew khat, but he has never seen anyone become violent while chewing it.

The defendant testified that khat is legal in London. He said he checked "No" in the customs declaration as set forth above because of a prior experience in 1990 when he brought khat into Toronto where it was taken from him as a violation of Canadian agricultural regulations. He was not charged with a crime. He checked "No" because he feared that United States Customs would take the khat and it would spoil his cousin's wedding. He testified that he did not think that the khat was illegal, but it could be taken away from him for agricultural reasons.

The defendant does not remember arguing with the customs inspectors or saying that he felt that khat should be legal.

Mohammed Sudi, a friend of the defendant and a United States citizen but born in Somalia (he came to the United States in 1978 at age twenty-four), testified that he had experience with khat growing up in Somalia. He said that it grows in Kenya and Ethiopia, and Somalis use it for weddings. The older generations used it to help them stay up late to read the Koran. He further testified that khat is legal in London and Somalia.

## Legal Analysis

Initially, it is important to recognize that the defendant is *not* charged with possession with intent to distribute khat. He is charged with possession with intent to distribute cathinone. The controlled substance is cathinone. Khat is not a controlled substance in Virginia.

The Commonwealth has the burden to prove beyond a reasonable doubt that the defendant knew the nature and character of the controlled substance, i.e. cathinone, he is charged with possessing with intent to distribute. *Anderson*

*v. Commonwealth*, 19 Va. App. 64, 67 (1994). He does not have to know the accurate and precise name of the substance, but only that it is a controlled substance which is illegal to possess with intent to distribute. *Id.* at 67.

The model jury instruction (No. 23.340) for this offense would be as follows:

> Knowledge that the drug possessed is a controlled substance is an element of the crime of possessing with intent to distribute. Thus, you may not find the defendant guilty of such crime unless you believe beyond a reasonable doubt that he was aware that the substance he possessed was a controlled substance. It is not necessary, however, for you to find that the defendant was aware that the very act of possessing cathinone was against the law.

This instruction was approved by the Court of Appeals in *Anderson*, 19 Va. App. at 64, where it was held that the refusal to give it in a distribution case was error, but because of the way counsel argued the scienter requirement and because the jury could not have properly found that the defendant lacked the requisite knowledge, the refusal was found to be harmless error.

Section 18.2-248 is a penal statute. Such a statute is construed strictly against the Commonwealth and favorably to the liberty of a citizen. Such a statute must be limited to cases clearly within the language used. *See*, e.g., *Harward v. Commonwealth*, 229 Va. 363 (1985). A penal statute must be construed as to proscribe only the conduct which the General Assembly clearly intended to be within the statute's ambit. *Battle v. Commonwealth*, 12 Va. App. 624 (1991). Under § 18.2-248, it is "unlawful for any person to ... possess with intent to ... distribute a controlled substance ...." Under § 54.1-3446, cathinone is a controlled substance. Strictly construed, the statute makes it unlawful to possess with intent to distribute cathinone, not a plant containing cathinone.

The defendant had cathinone in his possession because the laboratory found it in the khat seized from the defendant on October 13, 1994. But there is also the constitutionally required scienter element. Here there was no evidence that the defendant was aware of the character and nature of cathinone. He was aware of the character and nature of khat, but he was not aware of the cathinone found in khat.

While the defendant suspected that there may be some agricultural regulatory problems in bringing khat into the United States, I cannot find beyond a reasonable doubt that he knew that cathinone was in khat and that cathinone was a controlled substance. He could well have thought that khat

may be a controlled substance to some extent because he had a prior experience in Canada when khat was confiscated from him. But that knowledge only applied to khat, not to cathinone.

The Commonwealth has cited no cases indicating that an accused can be found guilty of possessing a controlled substance found in a plant when the accused's knowledge extended only to the nature and character of the plant. Defense counsel stated that he could find no reported cases concerning khat. There could be a variety of reasons for it, but I feel that it only shows that few persons are ever charged with possessing cathinone when they are possessing khat because khat is not a controlled substance. If khat needs to be controlled, then it should be done by the legislature, not the courts.

If an accused merely has some reason to feel that a particular plant which is not controlled has some legal impediments to it (e.g., it cannot be brought into the United States), he does not have the requisite knowledge of the nature and character of the controlled substance found in the plant. He cannot be deemed to know, absent some special knowledge, the nature and character of all the substances found in the plant.

This is not a situation where the defendant merely did not know the chemical name of the controlled substance. It is not a "green" means PCP case, as *Anderson*, 19 Va. App. at 64, or "pot" or "weed" means marijuana, as *Ritter v. Commonwealth*, 210 Va. 732 (1970), or *Anderson v. Commonwealth*, 215 Va. 21 (1974). Regardless of the words used by Investigator Gaither, I cannot find from his testimony that khat is the street name for cathinone. He never used the words "street name." At most, he said that khat was the natural form of cathinone, but his own testimony was that khat contained two different controlled substances, cathine as well as cathinone. I cannot help but conclude that khat is not cathinone because khat contains other things besides cathinone.

This is also not about the defendant's only being convicted if the substance is in its pure form. The defendant could be convicted if he knew that khat contained cathinone and he was aware of the nature and character of cathinone. The cathinone could be found in or mixed with other things as long as the defendant had knowledge of the cathinone. If the defendant knew about the cathinone, then it would be similar to PCP sprayed on parsley or cigarettes, or cocaine cut with lactose.

I agree that the defendant does not have to know that it is illegal to possess cathinone, but he still must be aware of the nature and character of cathinone. In this case I have a reasonable doubt that the defendant was aware of the nature and character of cathinone.

This decision is not made because khat is "not common." This decision flows from the simple proposition that the crime charged concerns possession of cathinone, not possession of khat.

The case of *Staples`v. United States,* 114 S. Ct. 1793 (1994), cited by the defendant provides a very logical approach for cases involving a defendant with general knowledge of a class of items, some of which are illegal to possess but lacking specific knowledge of what makes a specific item illegal to possess. In *Staples,* a prosecution under the National Firearms Act, the Supreme Court held that in order to be convicted of possessing a machine gun in violation of the Act, the government has to prove beyond a reasonable doubt that the defendant knew that the rifle he possessed had the characteristics that brought it within the definition of a machine gun. Although this case is not completely analogous, there is a significant similarity. Machine guns are legitimate items for governmental control as are certain types of substances. Mr. Staples' claim of ignorance of the automatic firing capabilities of the rifle he possessed is similar to the claim of the defendant that he did not know that khat contained a controlled substance. Unlike *Staples,* the controlled item is not one subject to control because of modifications to it but is a substance found in an item, a plant, not subject to control by law.

For the foregoing reasons, the defendant is found not guilty.