COURT OF APPEALS OF VIRGINIA

Present:   Judges Russell, Athey and Senior Judge Frank
Argued at Hampton, Virginia

UNPUBLISHED

TYRESE SENTELL WARREN

v.        Record No. 0931-21-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE CLIFFORD L. ATHEY, JR.
MARCH 15, 2022

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Bryant L. Sugg, Judge

(Chad G. Dorsk, on brief), for appellant.  Appellant submitting on
brief.

Justin B. Hill, Assistant Attorney General (Mark R. Herring [1],
Attorney General, on brief), for appellee.

Following a bench trial, the appellant, Tyrese Sentell Warren ("Warren") was convicted of

the aggravated malicious wounding of Tiondra Shaw ("Tiondra"), in violation of Code § 18.2-51.2,

and sentenced to thirty years of incarceration with fifteen years suspended.[2]  On appeal, Warren

contends that the trial court erred by finding the evidence sufficient to prove malice and rejecting his

claim of self-defense.  For the reasons that follow, we affirm the trial court.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial."  *Gerald v.*

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

[2] The trial court dismissed a related charge of unlawfully shooting, stabbing, cutting or wounding another in the commission of a felony.

*Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)).  In doing so, we discard any of appellant's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence.  *Id.* at 473.

On March 21, 2019, Warren was visiting the home of his girlfriend, Jasmine Shaw ("Jasmine"), when her niece, Tiondra, arrived to discover the couple arguing in the front yard. Tiondra passed the feuding couple as she carried a bottle of wine into Jasmine's home.  The quarrel escalated as Warren and Jasmine continued their altercation in the home's front doorway. Jasmine attempted to prevent Warren from entering the home by "slam[ming] the door in his face," but he "kicked [it] open" to find Tiondra standing in the kitchen holding the wine bottle. Warren approached Tiondra, asking, "What are you going to do with that bottle?"  Tiondra dropped the bottle, and it shattered on the floor as Warren attempted to seize it as he and Tiondra "tussl[ed]" in the hallway.  The altercation moved back to the front yard where Warren threw Tiondra into a bush.

When Tiondra climbed out of the bush, she saw Warren "standing over" Jasmine, repeatedly punching her as she lay on the ground.  Tiondra feared for her aunt's safety but believed that she could not defend her "by hitting [Warren]" because he was "strong enough to throw [her]" and had physically overwhelmed Jasmine, who was "three times" Tiondra's size. Consequently, Tiondra retrieved a knife from the kitchen and returned to confront Warren, "pointing" the knife toward him while warning him to "get back."

Warren wrested control of the knife from Tiondra by grabbing its blade, which cut his thumb as Tiondra tugged the knife backward in a failed effort to retain possession.  After Warren seized the knife, Tiondra backed away from him with her arms raised, declaring, "Okay, okay . . . [Y]ou got it, you got it."  Nevertheless, Warren pursued Tiondra, restrained her hands

and thrust the knife into the left side of her abdomen. As Tiondra collapsed to the ground, Warren apologized, stating that "he didn't mean to." Warren then left the scene as Jasmine called 911. Jasmine told Officer Christopher Heard that Warren "stabbed [Tiondra] and ran off." Tiondra also told police that Warren stabbed her, although she initially denied knowing who was responsible.

Paramedics transported Tiondra to the hospital for emergency treatment of a "life threatening stab wound." Hemorrhaging blood, Tiondra was hospitalized and underwent two surgeries to save her life. She suffered permanent, visible scarring of her abdomen, damaged internal organs, impaired bowel function, loss of employment, and a miscarriage.

Following his arrest, Warren admitted that he was involved in "an altercation" with Tiondra and Jasmine. He claimed, however, that Tiondra threatened him with a glass bottle by "turn[ing] [it] in an aggressive manner" in her hand and "flip[ing] her wrist back." He asserted that he and Tiondra struggled for control of the bottle, "pushing and shoving" each other until it broke on the floor, and he confessed to "putting his hands on" Jasmine. Nevertheless, Warren maintained that Tiondra "threaten[ed] him with [a] knife" while he and Jasmine were "tussling" outside and that he cut his hand while seizing possession of the weapon. Warren reenacted the incident to illustrate his claim that, after he seized control of the knife, Tiondra inadvertently ran into the blade as he maneuvered to avoid her oncoming charge. Warren's injuries, which he claimed were due to the incident, included a laceration on his left thumb and "faint mark[s]" on his stomach and cheek.

At trial, Tiondra admitted that she had consumed alcohol shortly before the incident and had lied to police during the investigation. She testified that, at the time of altercation, she had just returned from a party in Williamsburg where she drank "a glass of wine" while sharing a bottle with Jasmine. Tiondra admitted that she was upset during the fight when Warren broke

- 3 -

her "last bottle of wine" but denied that she ever "held the bottle up in an aggressive manner to intimidate [him]." Tiondra also acknowledged that she had lied to police about whether she knew her attacker. She explained that she had feared Jasmine would "get in trouble" because Warren was her boyfriend and "Jasmine wasn't supposed to have anybody in her house."

Testifying for the defense, Jasmine claimed that she, Tiondra, and Warren were drinking together before the night degenerated into violence. Jasmine asserted that Warren became "upset" after they returned home, and, at some point, she "punched him and he pushed [her]." Jasmine claimed that she and Tiondra tried to "push[] [Warren] out the [front] door," but he "grabbed [Jasmine's] ponytail" and "pulled [her] to the ground." Jasmine denied that Warren ever punched her, claiming that he merely stood over her as she lay on the ground, "holding [her] hair and . . . talking a whole bunch of junk." Jasmine further testified that she saw Warren "jump back" in surprise as Tiondra "came running out the house with the knife," "pok[ing] it around." She claimed that she "tried to separate [Warren and Tiondra]," but "[Warren] grabbed the knife and cut his hand and then [Tiondra] charged and he did what he did." Jasmine also claimed that she told Warren to flee before police arrived. Jasmine admitted, however, that she was in a romantic relationship with Warren, both at the time of the incident and during the trial. Moreover, she admitted that she maintained communication with Warren while he was in custody pending trial and had tried to secure his release on bail.

Warren, impeached by his criminal record, denied stabbing Tiondra or possessing the knife. He maintained that, as he argued with Jasmine, he found Tiondra behind him with her arm raised, holding a bottle as if she was intending to hit him in the head. Warren also claimed that he asked Tiondra three times what she was going to do with the bottle before he "knocked the bottle out of her hand." He also contended that afterward, Jasmine followed him outside and punched him in the face, prompting him to pull her to the ground by her hair and stand over her.

- 4 -

Warren claimed that Tiondra actually stabbed him, appearing "out of nowhere" with a knife to deliver "four [or] five pokes" to his midsection. He denied that he cut his hand by grabbing the blade; rather, he asserted that Tiondra cut his left cheek and thumb as he raised his hand to defend knife strikes. In addition, Warren testified that Tiondra charged and "tried to hit [him] again with the knife." Finally, Warren claimed that he "smacked [Tiondra's] hand" as she charged with the knife, causing the blade to point toward her abdomen, and as he tripped backward during the charge, Tiondra impaled herself on the blade as she fell on top of him.

At the conclusion of the evidence, the trial court found the evidence of Warren's guilt "overwhelming" and convicted him of aggravated malicious wounding. This appeal follows.

ANALYSIS

Warren contends that the trial court erred by finding that the evidence was sufficient to prove that he acted with malice and not in the heat of passion. In the alternative, he argues that the trial court erred by rejecting his claim of self-defense.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)) (alteration in original). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the

finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

A conviction for aggravated malicious wounding requires proof beyond a reasonable doubt that the accused acted maliciously. Code § 18.2-51.2. Malice is "the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Watson-Scott v. Commonwealth*, 298 Va. 251, 255-56 (2019) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). It "is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed a purposeful and cruel act without any or without great provocation." *Williams v. Commonwealth*, 64 Va. App. 240, 249 (2015) (quoting *Robertson v. Commonwealth*, 31 Va. App. 814, 823 (2000)). "[M]alice may be either express or implied by conduct." *Watson-Scott*, 298 Va. at 256 (citing *Essex v. Commonwealth*, 228 Va. 273, 280 (1984)). "Implied malice may be inferred from 'conduct likely to cause death or great bodily harm, willfully or purposefully undertaken,'" *Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019) (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 642 (1997)), including "the deliberate use of a deadly weapon," *Williams*, 64 Va. App. at 251 (citing *Avent v. Commonwealth*, 279 Va. 175, 202 (2010)). "Whether an accused acted with malice is generally a question of fact and may be proved by circumstantial evidence." *Palmer*, 71 Va. App. at 237 (citing *Canipe*, 25 Va. App. at 642).

Nonetheless, "[d]eliberate and purposeful acts may . . . be done without malice if they are done in the heat of passion." *Witherow v. Commonwealth*, 65 Va. App. 557, 567 (2015) (citing *Williams*, 64 Va. App. at 249); *see Dandridge v. Commonwealth*, 72 Va. App. 669, 681 (2021) ("Malice and heat of passion are mutually exclusive." (quoting *Canipe*, 25 Va. App. at 643)). "Heat of passion refers to the *furor brevis* which renders a man deaf to the voice of reason." *Id.* (quoting *Woods v. Commonwealth*, 66 Va. App. 123, 131 (2016)). "Heat of passion is determined by the nature and degree of the provocation," *Barrett v. Commonwealth*, 231 Va. 102, 106 (1986), and

"excludes malice when provocation reasonably produces fear [or anger] that causes one to act on impulse without conscious reflection." *Dandridge*, 72 Va. App. at 681. "As a general rule, whether provocation, shown by credible evidence, is sufficient to" establish that a defendant acted in the heat of passion "is a question of fact." *Woods*, 66 Va. App. at 131-32.

The record amply supports the trial court's finding that Warren acted with malice and not in the heat of passion. The evidence, viewed in the light most favorable to the Commonwealth, demonstrates that Warren pursued and stabbed an unarmed woman with a deadly weapon as she was retreating from him with her arms raised in surrender. From that evidence alone, the trial court could rationally conclude that Warren acted maliciously. *See Shifflett v. Commonwealth*, 221 Va. 191, 195 (1980) (affirming conviction for malicious wounding where defendant restrained unarmed victim's hands behind her back and stabbed her with a knife without provocation); *Hughes v. Commonwealth*, 39 Va. App. 448, 463 (2002) (imputing malice to defendant who stabbed unarmed victim with a knife). After delivering a near-fatal stab to Tiondra's unprotected abdomen, Warren withdrew the knife, ignored Tiondra's pleas for help, and fled the scene. Thus, the evidence demonstrated that his actions were conscious and deliberate, not the product of one who was "deaf to the voice of reason." *Williams*, 64 Va. App. at 249.

Although Warren argues for another version of events, "[d]etermining the credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (second alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "[T]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ragsdale v. Commonwealth*, 38 Va. App. 421, 429 (2002) (quoting *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000)).

- 7 -

The trial court rationally credited Tiondra's testimony that Warren was the primary aggressor and stabbed her without provocation. Tiondra testified that Warren forcefully entered the home, violently accosted her in the kitchen, threw her into a bush, and brutally attacked Jasmine as she lay defenseless on the ground. Moreover, when Tiondra attempted to defend Jasmine by brandishing the knife, Warren disarmed her and ignored her pleas of surrender before mercilessly stabbing her abdomen. Because the trial court's credibility determination was neither plainly wrong nor without evidentiary support, we will not disturb it on appeal.

Warren also argues that the trial court erred in rejecting his claim of self-defense. He contends that he was "not the aggressor" but rather the victim compelled him to "protect himself." Again, we disagree.

"Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about [his] guilt." *Hughes*, 39 Va. App. at 464 (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). "Whether an accused proves circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact." *Bell v. Commonwealth*, 66 Va. App. 479, 486 (2016) (quoting *Smith*, 17 Va. App. at 71).

"To establish a claim of self-defense, a defendant must show that he reasonably feared death or serious bodily harm at the hands of his victim." *Hines v. Commonwealth*, 292 Va. 674, 679 (2016) (citing *McGhee v. Commonwealth*, 219 Va. 560, 562 (1978)). "Whether the danger is reasonably apparent is judged from the viewpoint of the defendant at the time of the incident." *Id*. "The defendant must also show that he was in imminent danger of harm, that is, a showing of an overt act or other circumstance that affords an immediate threat to safety." *Id.* (citing *Commonwealth v. Cary*, 271 Va. 87, 99 (2006)). A defendant who reasonably fears imminent bodily harm "is privileged to exercise reasonable force to repel the assault." *Diffendal v. Commonwealth*, 8 Va. App. 417, 421 (1989).

The right to exercise lethal force in self-defense, however, is subject to careful limitation. Indeed, "the right to use deadly force in self-defense 'begins where the necessity begins and ends where it ends.'" *Couture v. Commonwealth*, 51 Va. App. 239, 251 (2008) (quoting *Thomason v. Commonwealth*, 178 Va. 489, 498 (1941)). Moreover, "the amount of force used to defend oneself must not be excessive and must be reasonable in relation to the perceived threat." *Foster v. Commonwealth*, 13 Va. App. 380, 383 (1991); *see Diffendal*, 8 Va. App. at 421 (holding that a person "shall not, except in extreme cases, endanger human life or do great bodily harm." (quoting *Montgomery v. Commonwealth*, 98 Va. 840, 843 (1900))).

Furthermore, "the necessity relied upon must not arise out of defendant's own misconduct." *Hughes*, 39 Va. App. at 464 (quoting *McGhee*, 219 Va. at 562). Thus, "[w]hen the accused is free from fault in bringing on the fray, [he] 'need not retreat, but is permitted to stand his ground and repel the attack by force, including deadly force, if it is necessary.'" *Gilbert v. Commonwealth*, 28 Va. App. 466, 472 (1998) (quoting *Foote v. Commonwealth*, 11 Va. App. 61, 67 (1990)). By contrast, where the accused is "in some fault in the first instance in provoking or bringing on the difficulty," he may use deadly force only "when attacked [he] retreats as far as possible, announces his desire for peace," and reasonably apprehends imminent serious bodily harm. *Id.* (citing *Bailey v. Commonwealth*, 200 Va. 92, 96 (1958)).

Here, the trial court rationally rejected Warren's claim of self-defense. First, the record firmly established that Warren was "at fault" in provoking the altercation. *Gilbert*, 28 Va. App. at 472. Tiondra testified that Warren instigated a series of violent confrontations that culminated in her near-fatal stabbing. By the time Warren approached Tiondra with the knife, he had already broken into Jasmine's home, provoked Tiondra into "tussling" in the kitchen, thrown her into a bush, brutally beat Jasmine, and violently seized the knife Tiondra used to defend Jasmine. Thus, the evidence demonstrated that "appellant created the [very] situation which resulted in his

stabbing [the victim] with his knife." *Hughes*, 39 Va. App. at 464. Consequently, he could resort to deadly force only if he had "retreat[ed] as far as possible" and "announc[ed] his desire for peace" while reasonably fearing imminent danger. *Gilbert*, 28 Va. App. at 472 (citing *Bailey*, 200 Va. at 96). Yet the record is devoid of any evidence that Warren either abandoned the fight or retreated; to the contrary, he advanced toward Tiondra and assaulted her as she was retreating and surrendering. *See Lynn v. Commonwealth*, 27 Va. App. 336, 350 (1998) (rejecting claim of excusable self-defense where defendant "neither abandoned the fight nor retreated"); *see also Hughes*, 39 Va. App. at 464.

Second, the evidence established that Tiondra did not pose a threat of "imminent bodily harm" to Warren at the time of the stabbing. *Diffendal*, 8 Va. App. at 421. Rather, she expressly abandoned the fight and retreated once Warren disarmed her. Any claim to self-defense Warren might otherwise have exercised dissipated with Tiondra's disarmament and retreat. *See Commonwealth v. Sands*, 262 Va. 724, 726 (2001) (holding that the trial court properly refused to give defendant's proffered jury instruction on self-defense because there was no evidence that defendant was in immediate danger when she killed her abusive husband).

Finally, even if Warren could conceivably have viewed Tiondra's surrender as presenting an immediate danger to his safety, his use of a deadly weapon to attack her was "excessive . . . in relation to the perceived threat." *Foster*, 13 Va. App. at 383. By stabbing a surrendering, unarmed individual with a knife, Warren "clearly exceeded any claim to self-defense that [he] may have asserted." *Peeples v. Commonwealth*, 30 Va. App. 626, 639 (1999) (*en banc*) (Lemons and Annunziata, JJ., concurring) (affirming conviction for aggravated malicious wounding where defendant fired pistol twice into surrendering victim's legs).

Accordingly, the trial court's finding that Warren did not act in self-defense was not plainly wrong and was supported by credible evidence.

CONCLUSION

For the foregoing reasons, we affirm Warren's conviction.

*Affirmed.*