COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Benton and
          Senior Judge Overton
Argued at Alexandria, Virginia


DANIEL COVINGTON HUGHES
                                        OPINION BY
v.   Record No. 0890-01-4    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                      DECEMBER 17, 2002
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                  Carleton Penn, Judge Designate

            Richard F. MacDowell, Jr. (MacDowell &
            Associates, on briefs), for appellant.

            Michael T. Judge, Assistant Attorney General
            (Jerry W. Kilgore, Attorney General, on
            brief), for appellee.


     A jury convicted Daniel Covington Hughes ("appellant"), a

juvenile certified to the circuit court pursuant to Code

§ 16.1-269.1(C) on the charge of malicious wounding in violation

of Code § 18.2-51, of unlawful wounding, a lesser-included

offense.[1]  The trial court sentenced appellant to commitment to

the Department of Juvenile Justice for an indefinite period of

time not to exceed his twenty-first birthday.  On appeal,

appellant contends that:  (1) the trial court had no

jurisdiction to sentence him because he was convicted of a

_____

     [1] Appellant was also certified and indicted on the charge of
felonious assault by mob in violation of Code § 18.2-42 and
found not guilty at his jury trial.

lesser-included offense and not one of the enumerated violent felonies listed in Code § 16.1-269.1; (2) the Commonwealth failed to disprove the defense of accidental stabbing; and (3) he proved self-defense as a matter of law. For the reasons that follow, we affirm the trial court.

## I. BACKGROUND

### A. Confrontation

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, the prevailing party, granting to it all reasonable inferences fairly deducible therefrom. See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997). At approximately 5:00 on the afternoon of August 15, 2000, appellant and two friends had a chance encounter with the victim, Samuel Giles ("Giles"), at the Dulles Towne Center Mall ("the mall"). This meeting was merely the latest in an apparently ongoing dispute between appellant and Giles. Appellant and his friends left the mall and went to a house where they discussed the incident and decided to return to the mall to confront Giles. At approximately 8:00 p.m., appellant and four friends returned to the mall and found Giles, who was working at the Old Navy store. They arranged to meet at 10:00 p.m. when Giles got off from work in one of the mall parking lots. Appellant and his friends armed themselves with knives and spent the next two hours attempting to recruit others to join them and confront Giles.

They decided that they "should not use [the knives] unless [they] really had to."  Appellant carried a Gerber knife that had "a little hole that you stick your finger in for better control."  The group parked their cars several hundred yards away from the meeting site so "in case there was a fight, [the cars] would not be damaged."

Giles was already at the mall parking lot, and he too had a group of friends with him.  Appellant approached Giles holding the knife.  The two groups, which each consisted of five to six persons, confronted each other, and a brawl ensued.  Giles and appellant "squared off" against one another, and appellant stabbed Giles in the chest with his knife.  Gains, one of Giles' friends, jumped in his car and put Giles, who was holding his chest with both hands, in the car.  He was later transported to the hospital in "critical . . . near death" condition with a stab wound that penetrated his chest below the ribcage, cutting through the skin, muscle and lining of the heart.  Giles had no vital signs when he arrived at the hospital and underwent emergency surgery to repair the puncture to his heart.  No one saw Giles with a knife, and the only knife recovered at the scene with blood on it belonged to appellant.

After Giles was taken to the hospital, appellant and his group waited with a security guard until police arrived.  At that time, appellant gave them a statement.  Police recovered a

- 3 -

total of seven knives at the scene, all of which belonged to appellant and his friends.  Appellant was arrested that evening.

## B.  Juvenile Procedure

On August 16, 2000, an intake officer of the Juvenile and Domestic Relations District Court of Loudoun County (the juvenile court) issued a petition charging appellant with malicious wounding.  On August 23, 2000 the Commonwealth filed a notice of motion to certify appellant to stand trial as an adult, pursuant to Code § 16.1-269.1(C).  On September 13, 2000, the juvenile court issued a second petition, for assault by mob, for the same incident.  On September 19, 2000 the juvenile court found probable cause to believe appellant committed the stabbing, and certified the case to the circuit court for indictment by the grand jury.  The grand jury indicted appellant for malicious wounding and assault by mob on October 10, 2000.  At a jury trial held December 27-29, 2000, appellant was found not guilty of assault by mob and convicted of unlawful wounding, a lesser-included offense of malicious wounding.

Prior to sentencing by the trial court, appellant filed a motion to set aside the jury verdict and a motion to transfer the case back to the juvenile court for sentencing.  The trial court denied both motions.  On March 26, 2001 the trial court sentenced appellant to commitment to the Department of Juvenile Justice for an indefinite period of time, not to exceed his twenty-first birthday.

- 4 -

## II. THE TRIAL COURT'S JURISDICTION

Appellant first contends that the trial court was without jurisdiction to sentence him or to retain jurisdiction for future offenses. The crux of appellant's argument is that when a juvenile is transferred pursuant to Code § 16.1-269.1(C), the violent juvenile felony category of offenses, the jurisdiction of the juvenile court is not divested if the violent juvenile felony is later dismissed or reduced to a lesser-included offense which is not one of the enumerated violent juvenile felonies. Appellant relies on Code § 16.1-241(A)(6) to support this analysis. Appellant contends it is both unfair and inappropriate to treat juveniles who have been acquitted of violent juvenile felonies or convicted of lesser-included offenses as adults for subsequent offenses. Appellant urges us to hold that when this situation arises, the circuit court should remand the case to the juvenile court for the offender to be sentenced and that his status remain as a juvenile for any later charges.

To resolve the question before us, we must determine the correct interpretation and application of the juvenile certification and jurisdiction statutes. "When analyzing a statute, we must assume that the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute." Toliver v. Commonwealth, 38 Va. App. 27, 32, 561 S.E.2d 743, 746 (2002)

(internal quotations omitted); see also Halifax Corp. v. First

Union National Bank, 262 Va. 91, 100, 546 S.E.2d 696, 702

(2001).

> Under basic rules of statutory construction,
> we examine a statute in its entirety, rather
> than by isolating particular words or
> phrases.  When the language in a statute is
> clear and unambiguous, we are bound by the
> plain meaning of that language.  We must
> determine the General Assembly's intent from
> the words appearing in the statute, unless a
> literal construction of the statute would
> yield an absurd result.

Cummings v. Fulghum, 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001)

(internal citations omitted).  In addition, when determining the

juvenile court's jurisdiction, "[t]he overriding principle

governing this inquiry is that the provisions should be

construed to protect the unique substantive rights of the

juvenile."  Jamborsky v. Baskins, 247 Va. 506, 509, 442 S.E.2d

636, 637 (1994).  Applying this standard to the statutory

provisions at issue, we hold the trial court properly exercised

its jurisdiction in sentencing appellant after the jury's

finding of guilt.

Code § 16.1-269.1(C) defines the class of "violent

felonies" that mandates certification to the circuit court upon

a finding of probable cause and limits the role of the juvenile

court in those cases.

> The juvenile court shall conduct a
> preliminary hearing whenever a juvenile
> fourteen years of age or older is charged
> with murder in violation of § 18.2-33,

felonious injury by mob in violation of § 18.2-41, abduction in violation of § 18.2-48, malicious wounding in violation of § 18.2-51, malicious wounding of a law-enforcement officer in violation of § 18.2-51.1, felonious poisoning in violation of § 18.2-54.1, adulteration of products in violation of § 18.2-54.1, robbery in violation of § 18.2-58 or carjacking in violation of § 18.2-58.1, rape in violation of § 18.2-61, forcible sodomy in violation of § 18.2-67.1 or object sexual penetration in violation of § 18.2-67.2, provided the attorney for the Commonwealth gives written notice of his intent to proceed pursuant to this subsection. The notice shall be filed with the court and mailed or delivered to counsel for the juvenile or, if the juvenile is not then represented by counsel, to the juvenile and a parent, guardian or other person standing in loco parentis with respect to the juvenile at least seven days prior to the preliminary hearing. If the attorney for the Commonwealth elects not to give such notice, or if he elects to withdraw the notice prior to certification of the charge to the grand jury, he may proceed as provided in subsection A.

Code § 16.1-269.1(C). Appellant concedes that all the requirements of Code § 16.1-269.1(C) were met with respect to his initial transfer. His jurisdiction argument addresses only his sentencing after the jury found him guilty of a lesser-included offense rather than a violent juvenile felony.

Appellant relies on the second clause of Code § 16.1-241(A)(6) in urging his desired result. This reliance, however, ignores the first clause of the provision. Those provisions read as follows:

- 7 -

In any case in which the juvenile is alleged to have committed a violent juvenile felony enumerated in subsection B of § 16.1-269.1, and for any charges ancillary thereto, the jurisdiction of the juvenile court shall be limited to conducting a preliminary hearing to determine if there is probable cause to believe that the juvenile committed the act alleged and that the juvenile was fourteen years of age or older at the time of the commission of the alleged offense, and any matters related thereto. In any case in which the juvenile is alleged to have committed a violent juvenile felony enumerated in subsection C of § 16.1-269.1, and for all charges ancillary thereto, if the attorney for the Commonwealth has given notice as provided in subsection C of § 16.1-269.1, the jurisdiction of the juvenile court shall be limited to conducting a preliminary hearing to determine if there is probable cause to believe that the juvenile committed the act alleged and that the juvenile was fourteen years of age or older at the time of the commission of the alleged offense, and any matters related thereto. A determination by the juvenile court following a preliminary hearing pursuant to subsection B or C of § 16.1-269.1 to certify a charge to the grand jury shall divest the juvenile court of jurisdiction over the charge and any ancillary charge. In any case in which a transfer hearing is held pursuant to subsection A of § 16.1-269.1, if the juvenile court determines to transfer the case, jurisdiction of the juvenile court over the case shall be divested as provided in § 16.1-269.6.

In all other cases involving delinquent acts, and in cases in which an ancillary charge remains after a violent juvenile felony charge has been dismissed or a violent juvenile felony has been reduced to a lesser offense not constituting a violent juvenile felony, the jurisdiction of the juvenile court shall not be divested unless

> there is a transfer pursuant to subsection A
> of § 16.1-269.1.

Code § 16.1-241(A)(6).  Appellant maintains that cases transferred pursuant to Code § 16.1-269.1(B) or (C) should properly fall in the "all other cases" category in the second clause of Code § 16.1-241(A)(6).  Thus, when he was convicted only of the lesser-included offense, appellant contends that the circuit court was divested of the power to sentence him and the case should have been remanded to the juvenile court for sentencing.  We disagree.

The first clause of Code § 16.1-241(A)(6) makes express provision for cases transferred pursuant to Code § 16.1-269.1(B) or (C).  The statute provides that in those cases "the jurisdiction of the juvenile court shall be limited to conducting a preliminary hearing to determine if there is probable cause to believe that the juvenile committed the act alleged . . . ."  Code § 16.1-241(A)(6).  By its plain language, the statute makes clear that once the juvenile court holds the preliminary hearing and finds that probable cause exists, it is statutorily divested of any further jurisdiction over the violent juvenile felony and "any ancillary charge."  Code § 16.1-241(A)(6).  The statutory language dictates that, when read in context, "all other cases" references those instances where the juvenile court failed to find probable cause to

trigger the automatic transfer provision of Code § 16.1-269.1(C).

"[T]he juvenile and domestic relations district court must conduct a transfer hearing before the circuit court may obtain jurisdiction over a juvenile alleged to have committed a criminal offense." Burfoot v. Commonwealth, 23 Va. App. 38, 46, 473 S.E.2d 724, 728 (1996) (citing Peyton v. French, 207 Va. 73, 79-80, 147 S.E.2d 739, 743 (1966)). "'The legislative purpose of Code § 16.1-241 is to afford juvenile defendants . . . the protection and expertise of the juvenile court during the preliminary, or certification, hearing stage of a criminal prosecution.'" Id. (quoting Payne v. Warden, 223 Va. 180, 184, 285 S.E.2d 886, 888 (1982)). The record before us makes clear that the juvenile court held the statutorily mandated preliminary hearing. At the close of the hearing, the juvenile court found probable cause on both the malicious wounding and assault by mob violent felonies and properly certified appellant for trial in the circuit court. Contrary to appellant's contentions, the statutory scheme defines the process due appellant and the requirements of the statute were met in this case.

Once the juvenile court made this determination, it was statutorily divested of jurisdiction over the malicious wounding and assault by mob charges, as well as any ancillary charges arising out of the brawl on August 15, 2000. The statutory

scheme makes no provision for any dormant jurisdiction in the juvenile court that could later be revived and which would require a remand for sentencing in the juvenile court where the trial did not occur.  Rather, the statutory scheme vests jurisdiction over all matters arising out of the violent juvenile felony in the circuit court once there has been a probable cause determination pursuant to Code § 16.1-269.1(C). See Code § 16.1-241(A)(6).

Other provisions of the Code support this conclusion.  The transfer statute makes clear that the circuit court will take cognizance of all charges related to the violent juvenile felony.

> Upon a finding of probable cause pursuant to a preliminary hearing under subsection B or C, the juvenile court shall certify the charge, and all ancillary charges, to the grand jury.  Such certification shall divest the juvenile court of jurisdiction as to the charge and any ancillary charges.  Nothing in this subsection shall divest the juvenile court of jurisdiction over any matters unrelated to such charge and ancillary charges which may otherwise be properly within the jurisdiction of the juvenile court.

Code § 16.1-269.1(D).  Likewise, the sentencing statute addresses cases such as the one before us.  Specifically, the trial court has express authority to impose sentence on the juvenile in cases where there is a felony conviction but the felony is not a violent juvenile felony.

- 11 -

In any case in which a juvenile is indicted, the offense for which he is indicted and all ancillary charges shall be tried in the same manner as provided for in the trial of adults, except as otherwise provided with regard to sentencing. Upon a finding of guilty of any charge other than capital murder, the court shall fix the sentence without the intervention of a jury.

1. If a juvenile is convicted of a violent juvenile felony, for that offense and for all ancillary crimes the court may order that (i) the juvenile serve a portion of the sentence as a serious juvenile offender under § 16.1-285.1 and the remainder of such sentence in the same manner as provided for adults; (ii) the juvenile serve the entire sentence in the same manner as provided for adults; or (iii) the portion of the sentence to be served in the same manner as provided for adults be suspended conditioned upon successful completion of such terms and conditions as may be imposed in a juvenile court upon disposition of a delinquency case including, but not limited to, commitment under subdivision 14 of § 16.1-278.8 or § 16.1-285.1.

2. If the juvenile is convicted of any other felony, the court may sentence or commit the juvenile offender in accordance with the criminal laws of this Commonwealth or may in its discretion deal with the juvenile in the manner prescribed in this chapter for the hearing and disposition of cases in the juvenile court, including, but not limited to, commitment under § 16.1-285.1 or may in its discretion impose an adult sentence and suspend the sentence conditioned upon successful completion of such terms and conditions as may be imposed in a juvenile court upon disposition of a delinquency case.

3. If the juvenile is not convicted of a felony but is convicted of a misdemeanor, the court shall deal with the juvenile in the manner prescribed by law for the

> disposition of a delinquency case in the
> juvenile court.

Code § 16.1-272(A) (emphasis added).  This was precisely the

procedure the trial court followed.  After the jury convicted

appellant of a felony other than the violent juvenile felony for

which he was indicted, the trial court exercised its discretion,

pursuant to Code § 16.1-272(A)(2), and sentenced him to

commitment to the Department of Juvenile Justice for an

indefinite period.  We conclude that the trial court correctly

interpreted and applied Code § 16.1-241(A)(6).

We are cognizant of the future implications for a juvenile

certified to the circuit court pursuant to Code § 16.1-269.1(C).

He or she will lose the ability to have any future case dealt

with in the juvenile system without a finding of

"non-amenability to treatment" as required by Code

§ 16.1-269(A).

> The trial or treatment of a juvenile as an
> adult pursuant to the provisions of this
> chapter shall preclude the juvenile court
> from taking jurisdiction of such juvenile
> for subsequent offenses committed by that
> juvenile.
>
> Any juvenile who is tried and convicted in a
> circuit court as an adult under the
> provisions of this article shall be
> considered and treated as an adult in any
> criminal proceeding resulting from any
> alleged future criminal acts and any pending
> allegations of delinquency which have not
> been disposed of by the juvenile court at
> the time of the criminal conviction.

Code § 16.1-271.

However, the statutes clearly reveal the legislature's intent that the event that requires all future actions involving the certified juvenile to commence as an adult is triggered by the probable cause finding and certification on the violent felonies, not the ultimate finding at trial. Any juvenile "tried or treated" in the circuit court is removed from the juvenile justice system and must be considered and treated as an adult in any future criminal proceedings, irrespective of that trial's outcome. See Code § 16.1-271. This particular provision represents a departure from the general statutory scheme that affords juveniles "unique substantive rights." See Jamborsky, 247 Va. at 509, 442 S.E.2d at 637. However, until the legislature says otherwise, there is no provision for remand to the juvenile court either for sentencing on the lesser-included offense conviction or on future charges. If the legislature had intended to exclude the factual scenario presented in the instant case from the complete jurisdictional divestiture provisions it could have done so. See, e.g., Forst v. Rockingham, 222 Va. 270, 278, 279 S.E.2d 400, 404 (1981) ("If the General Assembly had intended to use the term 'agricultural products,' it would have done so."); Barnes v. Commonwealth, 33 Va. App. 619, 628, 535 S.E.2d 706, 710 (2000) ("If the legislature had intended to restrict the predicate abduction offense to a specific statute, it would have done so."); Reynolds v. Commonwealth, 30 Va. App. 153, 160, 515 S.E.2d 808, 811-12

- 14 -

(1999) ("If the legislature had intended that operators undergo a forty-hour training program for each individual type of breath test equipment, then it would have said so in the statute."). There is no statutory language dictating a "transfer up and transfer back" down for the sentencing procedure advocated by appellant. We hold, therefore, that the circuit court acted within its jurisdiction.

### III. ACCIDENTAL STABBING

Next, appellant contends that the Commonwealth failed to prove that the stabbing was an intentional act rather than an accident.

"When reviewing the sufficiency of the evidence after a conviction, we consider that evidence in the light most favorable to the Commonwealth, and we affirm the conviction unless it is plainly wrong or without evidence to support it." Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 906 (2001). "It is well settled in Virginia that whenever a witness testifies, his or her credibility becomes an issue." Tatum v. Commonwealth, 17 Va. App. 585, 592, 440 S.E.2d 133, 137 (1994). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). Furthermore

> the jury were [sic] not required to accept
> the defendant's statement as to how the
> [stabbing] occurred simply because the

> defendant said it happened that way . . . .
> "If from the improbability of his story and
> his manner of relating it, or from its
> contradictions within itself, or by the
> attending facts and circumstances, the jury
> are convinced that he is not speaking the
> truth, they may reject his testimony."

Adams v. Commonwealth, 201 Va. 321, 324-25, 111 S.E.2d 396, 398-99 (1959) (quoting Randolph v. Commonwealth, 190 Va. 256, 263, 56 S.E.2d 226, 229 (1949)).

So viewed, the evidence established that appellant arranged to meet Giles in the mall parking lot. Appellant and several friends armed themselves with knives before the meeting. They returned to the mall at the appointed time and as they approached Giles and his friends, who were unarmed, one of appellant's supporters stated, "let's do it." Appellant had his knife in hand. At no time did appellant retreat. Neither did he seek the assistance of the police or a mall security officer, although he saw both prior to the stabbing. Giles did not have a knife, and appellant testified that he never saw Giles wield one.

> [T]he jury were [sic] not required to shut
> their eyes to all these facts and
> circumstances and accept the explanation of
> the [stabbing] as offered by the defendant's
> words. The facts and circumstances spoke
> much louder and more convincingly. His
> claim that it was accidental was to be
> examined in the light of his conduct. When
> so examined, the jury did not believe him
> and refused to accept his version.

Johnson v. Commonwealth, 188 Va. 848, 853, 51 S.E.2d 152, 154 (1949). See also Yarborough v. Commonwealth, 217 Va. 971, 234

- 16 -

S.E.2d 286 (1977) (fact finder had "perfect right" not to believe all the defendant says). "The facts and circumstances shown in this case justified the jury's rejection of the explanation offered by the defendant, and their verdict is supported by the evidence." Johnson, 188 Va. at 854, 51 S.E.2d at 154.

The jury, as fact finder, was entitled to disbelieve appellant's version that he held the knife up to scare Giles, who was unarmed, and that Giles somehow ran into the blade. The evidence supports the jury's determination that appellant armed himself prior to the fight and was prepared to use deadly force if necessary. Thus, the evidence was sufficient to disprove appellant's defense of accidental stabbing.

## IV.   SELF-DEFENSE AS A MATTER OF LAW

Lastly, appellant argues that the trial court erred in failing to find that he proved self-defense as a matter of law. Specifically, appellant argues that the evidence failed to prove that he was at fault in "bringing on the fight" and that his use of a knife was reasonable because he was afraid of Giles.

"Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt. Whether an accused proves circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact." Smith v. Commonwealth, 17 Va. App. 68, 71, 435 S.E.2d 414, 416 (1993)

(citing McGhee v. Commonwealth, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978); Yarborough, 217 Va. at 979, 234 S.E.2d at 292). "The trier of fact determines the weight of evidence in support of a claim of self-defense." Gardner v. Commonwealth, 3 Va. App. 418, 426, 350 S.E.2d 229, 233 (1986) (citing Yarborough, 217 Va. at 979, 234 S.E.2d at 291-92). "The law of self-defense is the law of necessity, and the necessity relied upon must not arise out of defendant's own misconduct." McGhee, 219 Va. at 562, 248 S.E.2d at 810.

The evidence established that appellant created the situation which resulted in his stabbing Giles with his knife. Indeed, appellant

> argue[s] with earnestness that [Giles] was the aggressor, as he struck the first blow, but [appellant] overlook[s] the fact that the invitation to engage in combat came from [him]. When one extends an invitation to another to engage him in combat, it may be assumed that if the invitation is accepted it will be accompanied with a blow.

Adams v. Commonwealth, 163 Va. 1053, 1058, 178 S.E. 29, 31 (1935).

Appellant also relies on Gilbert v. Commonwealth, 28 Va. App. 466, 506 S.E.2d 543 (1998). This reliance is misplaced. In Gilbert, "[t]he trial judge found and the evidence proved . . . that Gilbert was not at fault in . . . bringing on the fray." Id. at 473, 506 S.E.2d at 546. Here the jury concluded that appellant was at fault in bringing about the brawl. "[W]hether [Giles] had threatened [appellant] with death

- 18 -

or serious bodily harm, and whether [appellant] had reasonable grounds to believe such threats would be carried into execution, were questions to be determined by the jury." Callahan v. Commonwealth, 192 Va. 26, 30-31, 63 S.E.2d 617, 619 (1951) (citing Bevley v. Commonwealth, 185 Va. 210, 215, 38 S.E.2d 331, 333 (1946)). There is ample evidence in the record to support the jury's finding, and we will not disturb it on appeal. The judgment of the trial court is, therefore, affirmed.

Affirmed.