COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Causey and Callins
Argued at Norfolk, Virginia


TERRANCE DELVON LINDSEY

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0987-22-1              JUDGE DOMINIQUE A. CALLINS
                                                           OCTOBER 3, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
David W. Lannetti, Judge

J. Barry McCracken, Assistant Public Defender, for appellant.

Tanner M. Russo, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Terrance Delvon Lindsey of unlawful wounding.  On appeal from that

conviction, he challenges the trial court's admission of photographs depicting the victim's injuries at

the hospital and the trial court's denial of his motion to strike the evidence.  For the following

reasons, we affirm the trial court's judgment.

BACKGROUND[1]

On November 22, 2019, Old Dominion University (ODU) Officer Jasmine Rogers was

patrolling the ODU campus in a marked police vehicle when she observed a loud group of people

causing a "commotion" outside a 7-Eleven convenience store.  Officer Rogers and her partner

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing
party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting
*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires us to "discard the evidence
of the accused in conflict with that of the Commonwealth, and regard as true all the credible
evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."  *Cady*, 300
Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

parked behind the parking spaces fronting the store and investigated. Some of the individuals outside the store referred to "fighting" and, after noticing an "obviously irate" male pacing in the parking spaces outside the store entrance, Officer Rogers summoned him toward her patrol car. Officer Rogers's partner, dressed in uniform, approached the lighted store entrance and spoke to the individuals gathered outside the door.

Officer Rogers, also dressed in uniform, questioned the "irate" male, Nicholas Cardona. She noted that Cardona was visibly "upset," and, as he spoke with Officer Rogers, he gestured with his hands, which were empty, and lifted his shirt. He appeared to be unarmed. Cardona's wife and mother were nearby. His mother was "yelling" as she ran back and forth between Officer Rogers and her partner.

As Officer Rogers questioned Cardona, Lindsey exited the front entrance of the 7-Eleven. Turned at an angle, his back toward the parking lot, Lindsey walked backward slowly on the storefront sidewalk in the direction of Cardona, Officer Rogers, and Officer Rogers's patrol car. While Cardona's back was turned to the store to address Officer Rogers, Lindsey approached from behind, lifted his arm above his head, and struck Cardona in the face with a wine bottle, knocking him to the ground.

Officer Rogers immediately arrested Lindsey. At trial, the jury watched footage of the incident taken from Officer Rogers's body-worn camera. After viewing the footage, Officer Rogers reiterated her observation that Cardona had nothing in his hands when Lindsey approached and struck him with the bottle.

ODU Detective Christopher Jones, who was working on November 22, 2019, traveled to a Norfolk hospital to assist Officer Rogers with interviewing Cardona and his wife. Detective Jones testified that, when he arrived at the hospital, Cardona had undergone "some procedures" and was still "groggy." Detective Jones observed that Cardona's "eye, nose area was swollen and blue."

Detective Jones photographed Cardona's face when he "first made contact with him . . . in the hospital." Over Lindsey's objection, the trial court admitted the photographs. They depicted a deep cut above Cardona's right eye, both before and after it was sutured. The photographs also showed bruising around Cardona's right eye, blood on his face, and an oxygen tube in his nose.

Later, when Officer Rogers reviewed surveillance footage from the 7-Eleven store, the footage showed Cardona visiting the store twice before the incident with Lindsey on the evening of November 22, 2019. Although the Commonwealth did not introduce the footage at trial, Officer Rogers recalled seeing that, during the first visit, Cardona's wife approached the store entrance and Lindsey was "trying to open the door for her." Cardona's wife did not enter the store; instead, she left the scene with Cardona. Later, Cardona returned in a van with his wife and his mother, one of whom was brandishing a firearm.

Lindsey testified on his own behalf. He maintained that Cardona's "girlfriend" entered, then exited, the store. When she exited, "[s]omebody in the crowd across" from the store called her a "B-I-T-C-H." Lindsey stated that Cardona exited the van and accused Lindsey of swearing at his girlfriend. An altercation ensued, and, after bystanders separated the two men, Cardona left the scene. Cardona returned to the 7-Eleven, his third visit that evening, and exited his van with a gun. According to Lindsey, Cardona threatened to kill the people gathered outside the store. Lindsey offered a still photograph of Cardona from the store surveillance footage, which he claimed depicted Cardona holding a firearm outside the store entrance. Lindsey testified that Cardona's threat caused the group to scatter, and Lindsey to flee inside the store.

Lindsey maintained that he asked the store clerk for assistance in calling the police, but the store clerk declined. "Ten to fifteen seconds" passed before Lindsey seized a wine bottle and returned outside. Lindsey testified that he had "no idea" why he took the bottle. Once outside, Lindsey stood next to a trash can and watched Cardona speaking with someone; he denied being

aware that the individual was a police officer. Lindsey claimed that he was focused on whether Cardona had a gun in his hands. Less than 30 seconds after exiting the store, Lindsey "walk[ed] backwards" toward Cardona and struck him in the face with the wine bottle. Lindsey claimed that he hit Cardona because "[his] state of mind was still into [Cardona] putting [Lindsey] in danger." After watching the footage from Officer Rogers's camera, Lindsey agreed that Cardona was not armed. Lindsey admitted that he was a convicted felon.

Lindsey moved to strike the evidence at the close of the Commonwealth's evidence and again after the close of the defense's evidence. The trial court denied both motions. The jury ultimately convicted Lindsey of unlawful wounding. Lindsey appeals.

ANALYSIS

I. Admission of Photographs

Lindsey contends that the trial court erred by admitting the photographs of Cardona's injuries at the hospital because the Commonwealth offered no foundation to establish that the depicted injuries resulted from Lindsey striking him with the bottle; therefore, the images were "irrelevant." He stresses that Detective Jones did not witness Lindsey's assault on Cardona and no evidence established the nature of Cardona's injuries at the 7-Eleven store. Absent "a satisfactory nexus" between his injuries and the assault, including "the amount of time elapsed" between the photographs and the assault, Lindsey argues that the photographs lacked any probative value. Moreover, he contends that any probative value in the photographs was substantially outweighed by their prejudicial impact because they misled the jury about the nature of Cardona's injuries.[2]

---

[2] We disagree with the Commonwealth's argument that Lindsey raises a different evidentiary argument on appeal than he presented below. Although the Commonwealth contends that Lindsey never argued at trial that the evidence failed to demonstrate a "sufficiently close temporal link" between the photographs and the assault, Lindsey asserted at trial that Detective Jones could not testify that the injuries depicted in the photographs were sustained during the 7-Eleven incident. We conclude that this argument encompasses the "lack of nexus" argument raised on appeal. Therefore, Lindsey's evidentiary argument was preserved.

- 4 -

"The 'admissibility of evidence is within the discretion of the trial court,' and an appellate court will not reject such decision absent an 'abuse of discretion.'" *McBride v. Commonwealth*, 75 Va. App. 556, 569 (2022) (quoting *Williams v. Commonwealth*, 71 Va. App. 462, 487 (2020)). "In evaluating whether a trial court abused its discretion, . . . we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021) (alteration in original) (quoting *Carter v. Commonwealth*, 293 Va. 537, 543 (2017)). Under the abuse-of-discretion standard, "the [trial] court has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011).

"The proponent of the evidence bears the burden of establishing . . . the facts necessary to support its admissibility." *Church v. Commonwealth*, 71 Va. App. 107, 122 (2019) (alteration in original) (quoting *Perry v. Commonwealth*, 61 Va. App. 502, 509 (2013)). The measure of this burden is proof by a preponderance of the evidence. *Id.* So long as this threshold is met, "any gaps in the evidence" go to the weight, rather than the admissibility, of the proposed evidence. *Id.* at 122-23. "The scope of relevant evidence in Virginia is quite broad, as '[e]very fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue is relevant.'" *Id.* at 123 (alteration in original) (quoting *Commonwealth v. Proffitt*, 292 Va. 626, 634 (2016)). "Relevant evidence may be excluded if 'the probative value of the evidence is substantially outweighed by . . . the danger of unfair prejudice.'" *Fields v. Commonwealth*, 73 Va. App. 652, 672 (2021) (alteration in original) (quoting Va. R. Evid. 2:403(a)(i)). "Rule 2:403's requirement that only *unfair* prejudice may be considered as grounds for non-admission 'reflects the fact that all probative direct evidence generally has a prejudicial effect to the opposing party.'" *Id.* at 673 (quoting *Lee v. Spoden*, 290 Va. 235, 251 (2015)). "The responsibility for balancing the

probative value versus the prejudicial effect rests in the sound discretion of the trial court." *Kenner*, 299 Va. at 424.

A. *The preponderance of the evidence established a sufficient nexus between the injury and the assault so that the photographs bore some probative value.*

Although Detective Jones did not witness Lindsey's assault on Cardona, he was working on the date of the offense and assisted Officer Rogers by going to interview Cardona at the hospital where he was being treated. Detective Jones testified that he photographed Cardona's face when he "first made contact with him . . . in the hospital." The photographs include depictions of an un-sutured wound over Cardona's right eye, permitting a fair inference that Cardona's injury had occurred a short time earlier. Detective Jones's testimony that when he saw him, Cardona had recently undergone procedures on his eye further supported the inference, as did the swelling and bruising around Cardona's eye and blood-stained face. Moreover, Officer Rogers's body-worn camera footage showed Lindsey striking the right side of Cardona's face with the bottle, consistent with the location of the injuries depicted in the photographs. Based on Detective Jones's testimony, the footage of the assault, and the nature of the injuries, the Commonwealth established by a preponderance of the evidence that the photographs depicted injuries sustained from Lindsey's assault.

B. *Unfair prejudice did not substantially outweigh the probative value of the photographs.*

The degree and scope of Cardona's injuries were probative of the force used by Lindsey, and thus probative of whether Lindsey struck Cardona with the intent to maim, disfigure, disable, or kill Cardona. The photographs of Cardona's injuries were not so inflammatory that their prejudicial impact substantially outweighed their probative value. *See Conley v. Commonwealth*, 74 Va. App. 658, 673 (2022) ("[R]elevant evidence will only be excluded if its prejudicial nature *substantially* outweighs its probative value."). Accordingly, we hold that the trial court did not abuse its

discretion in deciding that the probative value of the evidence was not substantially outweighed by any unfair prejudice and thus admitting the photographs.

## II. Sufficiency of the Evidence

Code § 18.2-51 provides:

> If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony. If such act be done unlawfully but not maliciously, with the intent aforesaid, the offender shall be guilty of a Class 6 felony.

Lindsey contends that the evidence was insufficient to prove that he acted with the intent to maim, disfigure, disable, or kill Cardona because his actions were "motivated by extreme provocation and fear" rather than deliberation. He emphasizes that Officer Rogers's review of the store surveillance footage corroborated Lindsey's testimony that Cardona had been the aggressor in an altercation with Lindsey and that, following a brief departure, Cardona had returned to the scene and threatened him with a firearm. Citing his own testimony, Lindsey stresses that, when he exited the store and approached Cardona, he was unaware that police officers were present. He also notes that he threw the bottle at Cardona "seconds" after exiting the store, suggesting he lacked the opportunity to deliberate.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting

*Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"Intent is the purpose formed in a person's mind which may, *and often must*, be inferred from the facts and circumstances in a particular case." *Commonwealth v. Perkins*, 295 Va. 323, 330 (2018) (quoting *Burton v. Commonwealth*, 281 Va. 622, 626-27 (2011)). "Circumstantial evidence of intent may include the conduct and statements of the alleged offender." *Adams v. Commonwealth*, 33 Va. App. 463, 471 (2000). "Determining a defendant's intent 'is a factual question, which lies peculiarly within the province of the [fact finder].'" *Barnett v. Commonwealth*, 73 Va. App. 111, 120 (2021) (quoting *Hughes v. Commonwealth*, 18 Va. App. 510, 519 (1994) (en banc)). "It is proper for a [fact finder] to consider not only the method by which a victim is wounded, but also the circumstances under which that injury was inflicted in determining whether there is sufficient evidence to prove an intent to maim, disfigure, disable or kill." *Burkeen v. Commonwealth*, 286 Va. 255, 260-61 (2013). In determining whether a defendant acted with the requisite intent, a "fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts." *Moody v. Commonwealth*, 28 Va. App. 702, 706-07 (1998). Moreover, a "fact finder is entitled to draw inferences from those facts proven to be true, so long as the inferences are reasonable and justified." *Cottee v. Commonwealth*, 31 Va. App. 546, 555 (2000).

Accordingly, "when a person without any provocation strikes another with a deadly weapon . . . and thereby maims or disfigures him, he is presumed to have intended to maim or disfigure because that was the natural and probable consequence of his act." *Banovitch v. Commonwealth*, 196 Va. 210, 216 (1954). In *Pannill v. Commonwealth*, 185 Va. 244 (1946), the Supreme Court

indicated that, under appropriate circumstances, rocks, bricks, and beer glasses may be deemed deacy weapons. *See id.* at 254 ("Among other instruments which may under the circumstances of their use be regarded as deadly weapons [are] . . . sticks and cudgels, . . . rocks, bricks, [and] beer glasses . . . .").

"Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt." *Hughes v. Commonwealth*, 39 Va. App. 448, 464 (2002) (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). "The trier of fact determines the weight of evidence in support of a claim of self-defense." *Commonwealth v. Needham*, 55 Va. App. 316, 326 (2009) (quoting *Gardner v. Commonwealth*, 3 Va. App. 418, 426 (1986)). "Whether an individual establishes that he acted in self-defense is 'an issue of fact.'" *Id.* (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 979 (1977)).

Here, Lindsey claimed that Cardona was the aggressor in their initial altercation and that, after bystanders separated them, Cardona left and returned with a firearm, threatening to kill Lindsey. Although Officer Rogers corroborated Lindsey's testimony that Cardona initially had a gun, the evidence is undisputed that Cardona had nothing in his hands when Lindsey assaulted him with the bottle. The evidence is also undisputed that Lindsey approached Cardona with a weapon upon leaving the store rather than retreating from the scene. Although Lindsey testified that he threw the bottle at Cardona out of fear and because he did not realize that police officers were present, a rational fact finder was entitled to reject Lindsey's self-serving testimony. *See Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) ("In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998))). As depicted in the body-worn camera footage, Officer Rogers's partner was in plain sight in front of the store entrance only moments before Lindsey exited with a wine bottle. The footage

showed Lindsey walking backward as he approached Officer Rogers and Cardona, concealing the wine bottle until he drew close enough to assault Cardona.

Viewed as a whole, the circumstances reasonably supported the conclusion that Lindsey waited until Cardona was distracted and unarmed before surreptitiously approaching him and striking him in the face with a wine bottle at close range. Based on the nature of the attack and the injuries depicted in Cardona's hospital photographs, the evidence supported a reasonable conclusion that Lindsey struck Cardona with great force, permitting a rational inference that Lindsey intended to maim, disfigure, or disable Cardona. Accordingly, the evidence was competent, credible, and sufficient to prove beyond a reasonable doubt that Lindsey was guilty of unlawful wounding.

## CONCLUSION

For the reasons stated, the trial court's judgment is affirmed.

*Affirmed.*