# COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys,* Athey and Fulton
Argued at Norfolk, Virginia

UNPUBLISHED

RITA LASHAWN HARGROVE

v.      Record No. 1809-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION** BY
JUDGE ROBERT J. HUMPHREYS
MARCH 5, 2024

FROM THE CIRCUIT COURT OF NEWPORT NEWS
Tyneka L.D. Flythe, Judge

Charles E. Haden for appellant.

William K. Hamilton, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Rita Lashawn Hargrove appeals her convictions, following a bench trial, for malicious

wounding and use of a firearm in commission of a felony, in violation of Code §§ 18.2-51 and

18.2-53.1. Hargrove asserts that the evidence was insufficient to prove she acted with malice. She

claims that she fired her gun in self-defense.

## BACKGROUND

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth."

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v.*

*Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the

accused in conflict with that of the Commonwealth, and regard as true all the credible evidence

favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v.*

---

* Judge Humphreys prepared and the Court adopted the opinion in this case prior to the
effective date of his retirement on December 31, 2023.

** This opinion is not designated for publication. *See* Code § 17.1-413(A).

*Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

On May 24, 2021, Assryia Agalli-Marsala and her sister Danika picked up Miranda Cole to go to the store.[1] While driving, Assryia and Danika began arguing with Jasmine Eaton, Hargrove's daughter, over the phone. Miranda knew of Jasmine and Hargrove but had never communicated with or met them. As the trio drove, Jasmine invited Assryia to Hargrove's residence to fight. Danika drove Assryia and Miranda to a corner store near Hargrove's home where they met three other women: Haley, Paris, and Jymmie. The group of women then traveled to Hargrove's residence. Jymmie testified that she and the others accompanied Assryia to Hargrove's home to protect Assryia in case others tried to "jump her."

Paris went to the front door and demanded that Jasmine fight Assryia. Jymmie recorded Paris's interaction with Hargrove on her phone. The video showed Paris standing at Hargrove's front door alone briefly fighting with Hargrove. The pair disengaged, and Paris retreated to the yard while Hargrove remained in the home. Meanwhile, Jymmie, Miranda, Assryia, Haley, and Dankia exited the vehicle and congregated in the yard and sidewalk in front of the home.

As Paris retreated, Jasmine appeared on the front porch and stated, "Let's go, Syri. Let's go. Right now, Syri," while gesturing for the group to come to her. A second video of the incident depicted Jasmine and Assryia fighting in the front lawn. Toni Hargrove, Hargrove's sister, and an unidentified friend of Jasmine's stood in the background watching the fight. As the fight moved from the lawn to the parking lot, Hargrove and Miranda, who was wearing a pink jacket, were in the background on the video.

---

[1] This opinion refers to the participants by their first names as opposed to their surnames as several participants' surnames were not disclosed in the record.

Miranda testified that she stood apart from the others and watched the fight. Suddenly, someone walked up to her, put a gun on her leg, and shot her. As Miranda fell to the ground, she turned and saw Hargrove. Miranda was unable to move and remained where she fell until police arrived.

Miranda did not go to Hargrove's front door, make verbal threats or threatening gestures, or engage in any physical altercation that day. Neither Miranda nor any of her companions had a gun or a knife. As a result of the gunshot wound, Miranda underwent two surgeries and occasionally experienced pain in her leg requiring her to use crutches.

Newport News police arrived at the scene following the shooting. Upon arriving, the officers found Miranda on the sidewalk bleeding from her left leg. Miranda told them that Hargrove shot her. Police obtained permission to enter and search the home, where they found a firearm with a spent cartridge casing lodged in the chamber in a dresser in an upstairs bedroom.

At the scene, Hargrove admitted to Detective Stephen McKinley that she shot Miranda. Hargrove claimed that Paris and Miranda "bum-rushed" her and entered her home. Hargrove asked the women to leave and when they refused, she shot Miranda in her home.

Testifying in her own behalf, Hargrove explained that Assryia is the mother of two of Hargrove's grandchildren. Hargrove believed that Assryia came to her home to fight her and her daughter because they would not babysit for Assryia. Hargrove further noted that Assryia had threatened her before this incident.

Hargrove admitted that the first video of the incident captured her fight with Paris at the front door. Hargrove claimed that after the time when the first video ended, she went inside to keep her grandson from wandering outside. When she eventually went outside, Jasmine and Assryia were fighting. Hargrove walked towards Jasmine and Assryia and stated that "[t]his is too much.

I'm about to call the police." Hargrove admitted that when she walked into the front yard, she had her firearm in its holster in plain view.

Hargrove claimed that Miranda and another person suddenly advanced towards her and that Miranda attacked her with a metal object. Hargrove told them to get back; Miranda kept advancing and stated, "I don't give a about [sic] no gun." Hargrove said she shot in Miranda's direction from a distance of about three feet away. Hargrove stated that she shot the person who was closest to her and she was not aiming at Miranda. After she fired the shot, Hargrove called the police. Hargrove stated that she was upset and scared that these women were outside her home uninvited. She claimed that she was not trying to hurt anyone. Hargrove admitted that she owned the firearm and that she usually kept it locked in a drawer.

After closing argument from counsel, the circuit court made several factual findings. The court rejected Hargrove's characterization of the evidence. The circuit court found that the first video of the incident showed that Paris was at Hargrove's door and was "actively trying to pull [Hargrove] out or fight [Hargrove] in her door jam." When the scuffle between Hargrove and Paris ended, Paris retreated to the yard with the other women while Hargrove remained on the porch. Jasmine then appeared beside Hargrove. The court opined that the women could have retreated inside to safety and called the police, but they did not.

The circuit court found that "[e]veryone apparently agreed, for whatever reason, that it was okay to let . . . these two young women" fight. The court determined that the group was not a mob but rather an assembly of "referees." In the second video, the circuit court found, Jasmine and Assryia fought while Hargrove walked along the yard in the background. When Jasmine and Assryia's fight neared a car, two people—Jymmie and another person—attempted to pull Jasmine and Assryia apart. Hargrove, meanwhile, appeared to level a weapon "at someone, who was not even in the direction of her child." The circuit court concluded that Hargrove shot at an observer

who was not involved in the fight. Although Hargrove testified that she was scared, the court noted that she also testified that she was upset. The circuit court convicted Hargrove of malicious wounding and use of a firearm in commission of a felony and sentenced her to ten years of incarceration, with seven years suspended. Hargrove appeals.

ANALYSIS

I. Sufficiency of the Evidence

Hargrove asserts that the evidence was insufficient to prove she acted with malice. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Hargrove asserts that when an angry mob showed up at her home, she feared that she and her daughter were in imminent danger of bodily harm. When Jasmine was pinned against a car, she tried to intervene, but Miranda came towards her. Hargrove claims she drew her firearm and pointed it at Miranda, but Miranda disregarded the gun and advanced toward her swinging something. Fearing for her safety, and that of her daughter, she shot Miranda.

In the alternative, Hargrove argues that she shot Miranda in the heat of passion. Hargrove claims that when the mob unexpectedly appeared, she became fearful and angry. She claims that the mob's violence and unruliness constituted a provocation which should have reduced her malicious wounding charge to unlawful wounding. Further, because she acted in self-defense or heat of passion, the accompanying firearm charge must fail.

"If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall . . . be guilty of a Class 3 felony." Code § 18.2-51. "Malice inheres in the 'doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.'" *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). "Volitional acts, purposefully or willfully committed, are consistent with a finding of malice and inconsistent with inadvertence." *Luck v. Commonwealth*, 32 Va. App. 827, 833 (2000). "Malice may be inferred from the deliberate use of a deadly weapon." *Id.*

"Deliberate and purposeful acts may nonetheless be done without malice if they are done in the heat of passion." *Williams v. Commonwealth*, 64 Va. App. 240, 249 (2015). "[Heat of passion] excludes malice when provocation reasonably produces fear that causes one to act on impulse without conscious reflection." *Dandridge v. Commonwealth*, 72 Va. App. 669, 681 (2021) (alteration in original) (quoting *Witherow v. Commonwealth*, 65 Va. App. 557, 567 (2015)). "In order to determine whether the accused acted in the heat of passion, it is necessary to consider the nature and degree of provocation as well as the manner in which it was resisted." *Robertson v. Commonwealth*, 31 Va. App. 814, 823 (2000) (quoting *Miller v. Commonwealth*, 5 Va. App. 22, 25 (1987)).

"'[W]ords alone, however insulting or contemptuous, are *never* a sufficient provocation' for one to seriously injure or kill another." *Caudill v. Commonwealth*, 27 Va. App. 81, 85 (1998)

(quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 643 (1997)). "Moreover, where it is not the victim of the crime who provoked the defendant's heat of passion, the evidence will not support a finding of heat of passion." *Williams*, 64 Va. App. at 249. "Whether or not an accused acted with malice [or heat of passion] is generally a question of fact and may be proved by circumstantial evidence." *Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019) (quoting *Canipe*, 25 Va. App. at 642).

Here, the circuit court explicitly rejected Hargrove's version of the evidence. The Commonwealth's evidence proved that Assryia arranged for a group of women to go to Hargrove's home to fight Jasmine. Upon arriving, Paris pounded on the door and demanded Jasmine's presence outside. Hargrove opened the door and, after a brief argument, fought Paris in the doorway. Video of the incident showed Hargrove and Paris exchange blows and Paris retreat from the porch to the walkway in front of the home. More to the point, Hargrove confessed to shooting Miranda.

The circuit court, as the trier of fact, was permitted to reject Hargrove's self-serving testimony that Miranda was advancing at the time of the shot and to conclude instead that Hargrove shot Miranda without provocation and with malice. Hargrove's clearly intentional acts support the finding that she acted deliberately rather than impulsively in the heat of passion. *See Williams*, 64 Va. App. at 253. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that Hargrove was guilty of malicious wounding and the accompanying use of a firearm charge.

## II. Self-Defense

Hargrove asserts that the circuit court erred in rejecting her claim of self-defense. "Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about [her] guilt. Whether an accused proves circumstances

sufficient to create a reasonable doubt that [she] acted in self-defense is a question of fact." *Hughes v. Commonwealth*, 39 Va. App. 448, 464 (2002) (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). The circuit court, the factfinder in this case, simply did not credit the evidence of self-defense offered by appellant. Moreover, the credible evidence in this case failed to establish, as a matter of law, that Hargrove shot Miranda under either a theory of justifiable self-defense or that of excusable self-defense.

The circuit court found that Hargrove chose to engage with the women in her front yard. In the second video of the incident, Hargrove and Miranda appear to be passively watching Jasmine and Assryia brawl. The circuit court found that Hargrove leveled her firearm at Miranda, a bystander who was neither involved nor near the ongoing fight between Jasmine and Assryia. Miranda testified that while she watched the fight, Hargrove approached her from behind, placed a gun on her thigh, and shot her. Upon this evidence, the circuit court was entitled to reject Hargrove's claim of self-defense, as there was no indication that Miranda threatened Hargrove or caused her to fear bodily harm. Thus, the credible evidence supported the circuit court's finding that Hargrove did not act in self-defense, and we do not disturb that decision.

## CONCLUSION

We find that the evidence was sufficient to support Hargrove's convictions of malicious wounding and use of a firearm in commission of a felony. Accordingly, we affirm the circuit court's decision.

*Affirmed.*